21582

The STATE, Respondent, v. John H. PLATH and John David Arnold, Appellants.

(284 S. E. (2d) 221)

128

*C. Scott Graber, Ralph V. Baldwin, Jr.,* and *Peter L. Fuge,* Beafourt, and *Ronald A. Hightower,* Lexington, *for appellants.*

*Atty. Gen. Daniel R. McLeod, Asst. Attys. Gen. Brian P. Gibbes* and *Kay G. Crowe,* Columbia, and *Sol. Randolph Murdaugh, Jr.,* Hampton, *for respondent.*

October 7, 1981.

GREGORY, Justice:

This appeal is from sentences of death for murder and kidnapping entered against John H. Plath and John David Arnold.

We affirm the convictions, set aside the sentences and remand for resentencing.

## THE FACTS

The appellants Plath and Arnold were arrested on July 7, 1978, on warrants charging them with the kidnapping and murder of Betty Gardner a/k/a Betty J. Adkins, who died on or about April 12, 1978.

During the first phase of the trial, at which Arnold and Plath were found guilty a sordid tale unfolded.

Pursuant to a grant of immunity, Cindy Sheets, Plath's girlfriend at the time of the murder, and a juvenile who was Arnold's girlfriend at the time of the murder testified against Arnold and Plath. Both Miss Sheets and the juvenile were present during the murder.

Their testimony was that Miss Sheets, the juvenile, Plath, and Arnold picked up the victim, who was hitch-hiking. At first, they left the victim at one location where she said she would attempt to catch a ride with someone else. However, testimony indicates Arnold suggested they go back and kill the victim.

Miss Gardner willingly got into the car. Arnold, Plath, Miss Sheets and the juvenile then drove her to a wooded area near a dump. When Miss Gardner told them she should be getting to work, she was told she wasn't going anywhere. Miss Gardner was forced to perform sexual acts with both Plath and Miss Sheets. She was alternately stomped, beaten with a belt, hit with a jagged bottle, stabbed with a knife and choked with a garden hose. All four persons at one time or another participated in the physical abuse of the victim. Finally, after they felt sure Miss Gardner was dead, the four left the body in a wooded area. With the help of Miss Sheets, law enforcement officials later found the body.

Plath testified, attempting to minimize his role in the crime and shift the blame to the other participants, particularly Miss sheets. However, he never denied being at the scene of this gruesome crime.

Arnold elected not to testify.

During the second phase of the bifurcated trial, testimony was introduced in mitigation. Evidence of the deprived backgrounds of Arnold and Plath was introduced. Plath's illegitimate seven year old daughter and her grandmother testified, but the trial judge refused to charge that the daughter's existence should be considered a mitigating circumstance.

At the conclusion of the sentencing phase, the jury recommended imposition of the death penalty.

The trial judge accepted the recommendation.

After the appeal was filed, the case was remanded for a finding as to whether the indictment should be quashed because one of the grand jurors was a convicted felon. The trial judge found the presence of the convicted felon on the grand jury did not justify quashing the indictment.

## THE EXCEPTIONS

1. Arnold and Plath contend the South Carolina Death Penalty Act violates Article I, Section 15 of the State Constitution prohibiting corporal punishment.

This issue was decided in *State v. Allen,* 266 S. C. 175, 222 S. E. (2d) 287 (1976). That case was vacated by the U. S. Supreme Court on other grounds. 432 U. S. 902, 97 S. Ct. 2944, 53 L. Ed. (2d) 1074 (1977). That case held capital punishment does not violate the constitutional prohibition against corporal punishment.

2. Arnold and Plath also challenge the composition of the grand and petit jury venires, contending over-representation of older persons and under-representation of persons 18-30 years old denied them a jury composed of a representative cross-section of the community.

Among the circuits, there is disagreement over whether age should even be recognized as a factor in determining whether or not a jury represents a cross-section of the community.

The First Circuit has recognized age as a factor, *United States v. Foxworth,* 599 F. (2d) 1 (1st Cir. 1979); *United States v. Butera,* 420 F. (2d) 564 (1st Cir. 1970), while the

Ninth and Tenth Circuits have refused to recognize age as a factor, *United States v. Hamling*, 481 F. (2d) 307 (9th Cir. 1973), aff'd., 418 U. S. 87, 94 S. Ct. 2887, 41 L. Ed. (2d) 590 (1974); *United States v. Ross*, 468 F. (2d) 1213 (9th Cir. 1972), *cert. denied*, 410 U. S. 989, 93 S. Ct. 1500, 36 L. Ed. (2d) 188 (1973); *United States v. Test*, 550 F. (2d) 577 (10th Cir. 1976), *vacated and remanded*, 420 U. S. 28, 95 S. Ct. 749, 42 L. Ed. (2d) 786 (1976).

We agree with the Ninth and Tenth Circuits that age is not a factor for the following reasons:

"The mere fact of similarity in age cannot by itself be sufficient to define a cognizable group. If it were, any jury selection system could be successfully attacked by a strategic drawing of age group lines.

"Among any age group there will be vast variations in attitudes, viewpoints and experiences. The fact that two persons are the same age does not necessarily give them a community of interest." *United States v. Guzman*, 337 F. Supp. 140, at 146 (S. D. N. Y. 1972), *aff'd* 468 F. (2d) 1245 (2nd Cir. 1972), *cert. denied*, 410 U. S. 937, 93 S. Ct. 1397, 35 L. Ed. (2d) 602 (1973), quoted in *United States v. Test, supra*, at 593.

3. Arnold and Plath also argue the presence of a convicted felon on the grand jury justifies quashing of the indictment and granting of a new trial.

For the judgment of the lower court to be reversed, the error must be prejudicial. *State v. Hoffman*, 257 S. C. 461, 186 S. E. (2d) 421 (1972). While the convicted felon should not have been allowed to sit on the grand jury, his presence created no prejudice to Arnold and Plath. Thus, the trial court was within its discretion in refusing to quash the indictment and grant a new trial.

4. Arnold and Plath contend the South Carolina kidnapping statute, Section 16-3-910, Code of Laws of South Carolina (Cum. Supp. 1980), is unconstitutionally vague and overbroad.

This issue is disposed of by our decision in *State v. Smith*, 275 S. C. 165, 268 S. E. (2d) 276 (1980), where the statute was held to be constitutional.

5. Arnold and Plath also contend their indictment improperly set forth the charge of statutory kidnapping and thus should be rendered void.

The indictment charged kidnapping "against the peace and dignity of the State." That was the common law designation for kidnapping. The kidnapping statute, cited supra, supersedes common law kidnapping.

However, where an offense is designated by a common-law name, whereas there is a statute specifically covering such an offense, the mere fact the common-law name was given instead of the statutory name will not invalidate the indictment. 41 Am. Jur. (2d), *Indictments and Information,* § 105 at p. 946 (1968). As one court has noted, "we are not inclined to be controlled by fallacious precedents, technical and unwarranted distinctions enunciated in ancient decisions, and thus countenance the commission of one of the most heinous and unspeakable forms of crime." *State v. Altwatter,* 29 Idaho 107, 157 P. 256, at 257 (1916). See also *State v. Bendickson,* 62 N. D. 201, 242 N. W. 693 (1939); 121 A. L. R. 1090 (1939).

6. Arnold argues his indictment should have been quashed on the ground the State's grant of immunity to him was improperly withdrawn. The State agreed to grant Arnold immunity in return for his confession and waiver of rights provided he was not a principal.

When Miss Sheets implicated Arnold as a principal, the grant of immunity was withdrawn. Arnold argues had it not been for his confession, Miss Sheets would have never been apprehended. If she had not been apprehended, he would never have been established as a principal. Therefore, he argues, the fruit of the poisonous tree doctrine applied by analogy.

The fruit of the poisonous tree doctrine holds that where evidence would not have come to light but for the illegal actions of the police, and the evidence has been obtained by the exploitation of that illegality, the evidence must be excluded. See *Wong Sun v. United States,* 371 U. S. 471, 83 S. Ct. 407, 9 L. Ed. (2d) 441 (1963). Even if

the arrest was illegal, the fruit of the poisonous tree doctrine will not apply to a confession if it is freely and voluntarily given. *State v. Funchess,* 255 S. C. 385, 179 S. E. (2d) 25 (1971); *cert. denied,* 404 U. S. 915, 92 S. Ct. 236, 30 L. Ed. (2d) 189 (1971).

While the arrest has been the tree and the confession the fruit in prior cases, Arnold argues the confession is the tree and the incriminating testimony of Miss Sheets is the fruit.

We can find no poisonous tree.

As in *State v. Goolsby,* 275 S. C. 110, 268 S. E. (2d) 31 (1980), the State overwhelmingly met its burden of proving the waiver of rights and the confession to be voluntary.

Arnold's statement is in his own handwriting. This handwritten statement plainly grants immunity only if Arnold is not a principal. Arnold never contends in his brief the waiver and the confession were involuntary.

Finding no police misconduct, we hold the fruit of the poisonous tree doctrine to be inapplicable and the withdrawal of immunity to be proper.

7. Arnold and Plath also contend the solicitor did not comply with Section 16-3-20(B), Code of Laws of South Carolina (Cum. Supp. 1980) when he provided them with his entire file on their case. Section 16-3-20(B) states, "Only such evidence in aggravation as the State has made known to the defendant in writing prior to trial shall be admissible."

In essence, Arnold and Plath say the solicitor should have sifted through the file and listed the evidence in aggravation.

There is no right of discovery in criminal cases in South Carolina, and the solicitor is not required to turn over his entire file. *State v. Smart,* 274 S. C. 303, 262 S. E. (2d) 911 (1980). By turning over the entire file, the solicitor far exceeded what he was required to do.

8. Plath contends because of prejudicial pretrial publicity his motion for change of venue should have been granted.

A motion for change of venue is discretionary with the trial judge, and the defendant has the burden of demonstrating actual juror prejudice. *State v. Goolsby, supra; State v. Tyner,* 273 S. C. 646, 258 S. E. (2d) 559 (1979). As in *Goolsby,* the record shows maximum precaution by the trial judge to ensure elimination of potential jurors who may have been prejudiced by pretrial publicity and the absence of prejudice on the part of those chosen.

The motion was properly denied.

9. Arnold and Plath also contend their cases should have been severed because of their antagonistic defenses. They argue that Arnold chose not to testify, while Plath testified in an attempt to vindicate himself and cast blame on the others. Arnold further contends Sections 16-3-20(B) and 16-3-28, Code of Laws of South Carolina (Cum. Supp. 1980) grant the defendant the last argument. Since only one of the defendants can have the last argument, they argue failure to sever violates the statutes.

Arnold also contends if a separate trial had been granted, the defense could have seated a juror opposed to the death penalty.

A motion for severance is addressed to the sound discretion of the trial judge. *State v. Allen, supra,* 266 S. C. 175, 222 S. E. (2d) 287; *State v. Britt,* 235 S. C. 395, 111 S. E. (2d) 669 (1959). The argument that failure to sever denies the defendant the statutory right to the last argument is specious. To hold the statute provides an absolute right of each defendant to the last argument would be to preclude co-defendants from ever being tried together.

The argument that separate trials would have allowed the defense to seat a juror opposed to the death penalty is equally spurious. The peremptory challenges may be exercised for any reason or no reason at all, *State v. Richburg,* 250 S. C. 451, 158 S. E. (2d) 769 (1968), appeal after remand, 253 S. C. 458, 171 S. E. (2d) 592 (1969), *cert. denied,* 399 U. S. 930, 90 S. Ct. 2260, 26 L. Ed. (2d) 799 (1970). There is no way the defense can prove why the solicitor struck a

particular juror. Furthermore, there is no assurance that fewer jurors in favor of the death penalty would have been seated if the trial had been severed.

■ 10. Arnold also argues the State should not have been allowed to *voir dire* prospective jurors.

The case law clearly establishes the solicitor does have the right of *voir dire* in capital cases. *State v. Goolsby, supra; State v. Tyner, supra; State v. Smart, supra.*

■ 11. Arnold further contends the use of peremptory challenges to exclude jurors because of their opposition to the death penalty is improper.

In *State v. Richburg, supra,* this Court held peremptory challenges may be exercised for any reason or no reason at all. Therefore, there's is no way for the defense to tell whether the strike is being exercised just because the juror is opposed to the death penalty or for other reasons.

Thus, this exception is without merit.

■ 12. Plath argues the trial court erred in refusing to allow him to exercise a belated peremptory challenge to the juror Mable Roberts before she was sworn.

In *State v. Holland,* 261 S. C. 488, 201 S. E. (2d) 118 (1973), this Court refused to declare a mistrial or allow an inquiry into the status of a particular juror. That case is distinguishable factually because there the attempt to unseat the juror came during the third day of trial. However, the rationale of the court in *Holland,* 261 S. C. at 498, 201 S. E. (2d) 118, is applicable:

"This particular juror was a member of the jury panel that had been extensively examined on *voir dire* as to fairness and impartiality. No showing was made to the court at trial, nor has any been made since, to indicate bias or lack of impartiality on the part of this juror. Under these circumstances, there was no error on the part of the trial judge in refusing the motion."

Plath had ample opportunity to examine the prospective juror on *voir dire.* The record shows the trial judge gave

counsel for Plath two opportunities to strike the juror; one when she was accepted and the other later in the jury selection process. Furthermore, co-defendant Arnold contended removing a juror after all of the jurors and alternates had been seated would prejudice his case. Plath has not shown the requisite prejudice to him in order to hold the trial judge abused his discretion by refusing to allow the belated peremptory challenge to be exercised.

13. Arnold and Plath also contend the trial court should have ordered access to the records of the juvenile who was granted immunity in return for her testimony against them. The records were in the possession of the Department of Juvenile Placement and Aftercare.

Arnold and Plath further argue the solicitor should have released the records pursuant to their motion under *Brady v. Maryland,* 373 U. S. 83, 83 S. Ct. 1194, 10 L. Ed. (2d) 215 (1963) for access to exculpatory evidence.

This situation is governed by Section 14-21-500, Code of Laws of South Carolina (Cum. Supp. 1980). That section states: "Statements of the juvenile contained in the Department of Juvenile Placement and Aftercare files shall not be furnished to the solicitor's office as part of the intake review procedure nor shall the solicitor's office be privy to such statements in connection with its intake review."

The solicitor could not provide the defendants with material he was forbidden by law from obtaining.

Furthermore, under Section 14-21-510, Code of Laws of South Carolina (Cum. Supp. 1980), the Family Court has original exclusive jurisdiction over matters pertaining to delinquent children. Therefore, the trial judge had no authority to order production of the records.

There was nothing to prevent the defendants from following the proper procedure of petitioning the Family Court for production of the records. Nonetheless, they failed to do so. They cannot now be heard to complain.

14. Plath argues the trial court should not have admitted an immunity agreement in which witness Cindy Sheets indicated she had taken a lie detector test. He

further argues that since the agreement was admitted, the trial judge should have instructed the jury no special considerations should be given to the agreement.

In *State v. Robinson,* 238 S. C. 140, 119 S. E. (2d) 671 (1961), this Court held a defendant may not reserve vices in his trial of which he has notice, taking his chances of a favorable verdict and in case of disappointment use the error to obtain another trial. In that case, counsel failed to request that the court strike improper testimony.

Plath's counsel had notice of the immunity agreement and its contents. Counsel failed to object to the introduction of the agreement. He even concedes in his brief the solicitor was "quite skillful" in getting the information before the jury.

Since Plath had notice of the agreement, he should not be allowed to profit from reserving his objection.

As to the requested charge, the trial judge cannot comment on the weight of the evidence. *State v. Pruitt,* 187 S. C. 58, 196 S. E. 371 (1938). Therefore, the trial judge could not have charged the jury on the weight to be given to the immunity agreement.

15. Plath further contends the trial judge should have charged the jury as to the law concerning accessory after the fact.

Three elements must unite to form accessory after the fact: (1) the felony must be complete; (2) the accessory must have knowledge the principal committed the felony; and (3) the accessory must harbor or assist the principal felon. *State v. Nicholson,* 221 S. C. 399, 70 S. E. (2d) 632 (1952). The accessory's absence at the time the crime was actually committed is necessarily implied from the above definition and is an essential element of the offense. 22 C. J. S., *Criminal Law,* § 95, at pp. 273-274 (1961); 40 Am. Jur. (2d) *Homicide,* § 28, at p. 319 (1968).

Since Plath admitted he was present at the scene of the crime, the elements of accessory after the fact were not present. Thus, the trial judge correctly refused the charge.

16. Arnold and Plath contend they should have been allowed to introduce the electric chair and testimony regarding the process of electrocution in the sentencing phase of the trial.

Electrocution as the method of death is a legislative decision. *State v. Atkinson,* 253 S. C. 531, 172 S. E. (2d) 111 (1970), vacated on other grounds, 408 U. S. 936, 92 S. Ct. 2859, 33 L. Ed. (2d) 752 (1972).

The function of the jury is to consider whether the death penalty should be imposed, not the method of death.

The introduction of the evidence would have been irrelevant, diverting the jury from its duty.

The trial judge properly refused to allow its introduction.

17. Plath also argues the following colloquy between the prosecutor and Dr. Bruce Pearson, an anthropologist and linguist who testified on behalf of appellant, constituted improper cross examination:

"Q. (Solicitor) Yes, sir. Now, you have investigated every case, have you not? Checked in every case that has been sentenced to the electric chair, haven't you?

"A. (Dr. Pearson) I can't say I have studied every individual case. I am aware of the overall figures.

"Q. (Solicitor) I am addressing my remarks to you about Lewis Bostick that was sentenced to the electric chair, then given life imprisonment. Wasn't he turned out of that penitentiary and allowed to go deliver goods up to Spartanburg and escaped less than two years after he got a life imprisonment sentence?

Mr. Hightower (defense counsel):
Your Honor, we feel that is improper.

"A. (Dr. Pearson): I am not acquainted with that case.

The Court: Overruled. He says is not acquainted with the case." (Tr., p. 2026, lines 3-17).
This colloquy followed Dr. Pearson's testimony on his opinion of the death penalty.

More latitude is allowed on cross examination than on direct examination and the scope of the examination is largely discretionary. *State v. Fuller*, 227 S. C. 138, 87 S. E. (2d) 287 (1955). In *Fuller*, the solicitor questioned the expert witness, a psychiatrist, about the testimony given by a psychologist who testified at a different trial. The Court found that since the expert had given an opinion as to the mental condition of the accused, it was proper for the solicitor to inquire into the source of information upon which that opinion was based.

Similarly, here, the expert testified as to his opinion on the death penalty. The solicitor's inquiry was designed to delve into the source of information upon which that opinion was based. Therefore, his inquiry was proper.

18. Plath also contends the trial court should have given instructions *sua sponte*, regarding the alleged juror's view of Arnold and Plath in chains outside the courtroom.

Absent proof of prejudice, a charge to disregard viewing of prisoners in chains is not necessary. *State v. Moore*, 257 S. C. 147, 184 S. E. (2d) 546 (1971).

No prejudice was shown and thus no instruction was necessary.

19. Arnold also argues that Plath's attorney's statement during closing argument that a life sentence includes the possibiltiy of parole after service of twenty years was ground for a mistrial.

This situation is similar to the one in the recent case of *State v. Goolsby, supra*. There, the trial judge charged the jury concerning parole. However, the trial judge withdrew his charge and affirmatively instructed the jury to consider the alternative sentences of death and life imprisonment without regard to parole. This Court held the instruction cured any prejudice.

Similarly, here, the trial judge specifically instructed the jury not to consider parole. Therefore, any prejudice resulting from the attorney's reference to parole was cured by the charge.

20. Plath further argues the jury should have been instructed that the State must prove each element of kidnapping beyond a reasonable doubt. He contends the trial judge should have charged the jury Plath was presumed innocent of the charge of kidnapping.

In *State v. Crocker*, 272 S. C. 344, 251 S. E. (2d) (1979), this Court held that the trial judge did not have to charge the jury that absence of heat of passion must be proved beyond a reasonable doubt when he repeatedly instructed them that the State had the burden of proving the defendant's guilt of murder beyond a reasonable doubt. Heat of passion is not one of the elements of murder.

The applicable principles have been set forth in 75 Am. Jur. (2d) Trials, § 828, at p. 721 (1974):

"While it is the duty of the trial judge in a criminal case to instruct the jury that the guilt of the accused must be proved beyond a reasonable doubt, it discharges that duty when it has once given adequate instructions in this regard. There is no necessity for defining 'reasonable doubt' more than once. A requested instruction as to the rule of reasonable doubt is properly refused where substantially covered by the general instructions of the court. Indeed, the general instruction as to the rule of reasonable doubt is sufficient without repeating the rule in other instructions which relate to separate facts in the case."

These general principles when coupled with the *Crocker* case show the trial judge was within his discretion in refusing to charge reasonable doubt as to each element of kidnapping since he properly instructed the jury on reasonable doubt.

21. Plath also contends the judge should have charged the jury that the existence of his seven year old daughter was a mitigating circumstance.

Plath was allowed to present the illegitimate daughter and her grandmother as witnesses. Therefore, no prejudice resulted from the refusal to charge, and no reversible error was committed. *State v. Hoffman, supra.*

22. Arnold and Plath also argue the crime of kidnapping merged with the crime of murder and thus the imposition of the sentence for the lesser crime of kidnapping should have been stricken. Thus, they say the trial judge should not have imposed the sentence of death.[1]

In a dissenting opinion, with which the majority did not disagree on this issue, Justice Baker set forth the doctrine of merger in South Carolina:

"In the commission of felonies, although they are interlinked, and both consummated, there is no merger of the crimes, and one committing two or more felonies in the consummation of one of the felonies may be tried and convicted of either of the felonies. It is only where the criminal act constitutes both a felony and misdemeanor that there is a merger of the lesser crime into the greater, and there can be no conviction except for the felony." *State v. Woods et al.,* 189 S. C. 281, at 303, 1 S. E. (2d) 190 (1939).

Kidnapping is a felony, not a misdemeanor. Therefore, the doctrine of merger is inapplicable.

23. Plath contends the trial judge should have charged the jury it should consider his prior criminal convictions only for the purpose of impeachment.

In *State v. McDowell,* 272 S. C. 203, 249 S. E. (2d) 916 (1978), this Court held that if the charge given adequately covers the substance of the defendant's requested charges, the trial judge can refuse the defendant's requests. Here, the general instruction on credibility sufficiently covered the requested charge.

24. Plath also argues the solicitor's closing argument was designed to appeal to personal prejudice and hence was improper. One exception is to the solicitor's statement he would never ask for the death penalty in Beaufort again if the jury did not return with a recommendation that the death penalty be imposed.

---

[1] See *State v. Adams,* Opinion Number 21581, filed October 6, 1981.

The same solicitor made an almost identical mistake twenty years ago in *State v. Davis*, 239 S. C. 280, 122 S. E. (2d) 633 (1961). There, the solicitor said if the jury turned the defendant accused of rape loose, he would have to turn loose others also accused of rape. This Court held that argument to be reversible error. Here, it was also reversible error.

25. Arnold contends the solicitor's comment during his closing argument that the trial judge could ignore the jury's recommendation should have resulted in the death penalty's being set aside.

In three recent cases, this Court held the death penalty should be set aside when the prosecutor comments on the power of the court to suspend the death sentence and the right of the defendant to seek appellate review. *State v. Woomer*, S. C., 277 S. E. (2d) 696 (1981); *State v. Gilbert*, 273 S. C. 690, 258 S. E. (2d) 890 (1979); *State v. Tyner, supra*. It should be noted that these cases had not been decided when the able trial judge refused to set aside the death penalty.

Those cases control, and the death sentence should be reversed.

Because of these two errors in the solicitor's closing argument to the jury, the death sentences imposed on Plath and Arnold are set aside, and the case is remanded for a resentencing proceeding conducted by the trial court pursuant to Code Section 16-3-25(E) (2) (Cum. Supp. 1980).

We affirm the convictions, vacate the death penalties and remand.

Affirmed in part; vacated in part; and remanded.

LEWIS, C. J., and LITTLEJOHN, NESS and HARWELL, JJ., concur.