640 S.E.2d 450

The STATE, Respondent,

v.

**Troy Alan BURKHART, Appellant.**

No. 26243.

Supreme Court of South Carolina.

Heard Sept. 20, 2006.

Decided Jan. 8, 2007.

484

Chief Attorney Joseph L. Savitz, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Derrick K. McFarland, of Columbia; and Solicitor Christina Theos Adams, of Anderson, for respondent.

Justice MOORE:

Appellant shot and killed three people in a rural area of Anderson County on November 19, 1997. The victims were brothers Shane and Stacy Walters, aged twenty-seven and twenty-two, and Sonya Cann, aged twenty-one. Appellant was convicted of three counts of murder and three counts of possessing a firearm during the commission of a violent crime and sentenced to death. These convictions were overturned on appeal. *State v. Burkhart*, 350 S.C. 252, 565 S.E.2d 298 (2002). In March 2004, appellant was again convicted and sentenced to death. We affirm appellant's convictions but reverse and remand for resentencing.

## FACTS

Appellant became acquainted with brothers Shane and Stacy Walters on a Friday night when they met at a mutual friend's home. Appellant asked the brothers for help with the septic tank at his restaurant. They worked together and socialized over the course of the weekend. All three used methamphetamine repeatedly from Friday until late into the night on Sunday. At about 5:00 a.m. Monday morning, the three men went to pick up Shane's girlfriend, Sonya, at her home. The four of them drove off in Shane's extended-cab "dually" truck. The victims were not seen alive again.

Later that morning, at about 8:15 a.m., appellant came to the Seneca police department and told police he had killed three people in self-defense. He led police to a secluded kudzu field where police found the bodies of Shane, Stacy, and Sonya on the ground. The truck was recovered from where appellant had parked it at his father's house. Its interior was covered with blood. Forensic evidence indicated that all three victims had been shot in the head at close range while seated in the cab of the truck and their bodies had been dragged onto the ground. The State also produced evidence that Stacy and Shane had been stomped while on the ground and Sonya was shot in the head while lying there.

The only weapon used was appellant's semi-automatic pistol which could hold eight rounds, seven in the magazine and one in the chamber.[1] Two empty magazines were at the scene indicating appellant had reloaded. Experts estimated up to eleven shots could have been fired.

## ISSUES

1. Was the exclusion of evidence in the guilt phase prejudicial?

2. Was the admission of evidence regarding prison conditions in the sentencing phase reversible error?

---

1. Shane's unloaded hunting rifle was found under the truck's back seat beneath a large speaker. In Sonya's purse were two unopened pocketknives, and Shane had an unopened knife in his pants pocket.

## DISCUSSION

### 1. Exclusion of evidence in guilt phase

Appellant claimed self-defense. He testified that he killed the victims because he believed the brothers had been hired to kill him by his uncle, Ronnie Burkhart, an infamous drug-dealer with whom appellant was on bad terms.

Appellant testified that when they arrived at the kudzu field, Shane was holding appellant's gun because appellant had given it to him to shoot at a deer earlier. While they were sitting in the truck, Shane asked appellant if he had ever wronged "Uncle Ronnie." Because appellant had been threatened by Ronnie and was surprised that Shane knew Ronnie, he immediately became anxious. Shane then pointed the gun at appellant and ordered him out of the truck. Stacy said, "We're going to make you squeal like a pig, boy," which appellant took to mean they were going to rape him.

Appellant grabbed the gun from Shane and began shooting. When it was over, he pushed the bodies out of the truck and put the second magazine in the gun because he thought someone else may have been out in the field. A shot went off outside the truck. Finally, appellant drove off in Shane's truck. He went to pick up his wife and his father because he was afraid Ronnie would hurt them. After parking Shane's truck at his father's house, appellant went to the police.

Sheriff Taylor was called as a defense witness. He testified that Ronnie, who was now deceased, was at one time an international drug smuggler in cocaine and marijuana with connections to violent drug lords. On cross-examination, Sheriff Taylor stated that Ronnie was very careful in his dealings. The solicitor then asked, "Did you ever uncover anything that showed that Shane and Stacy were on (sic ) any of this inside circle that Ronnie Burkhart would have trusted them?" Sheriff Taylor answered "no." In reply, the defense sought to elicit Sheriff Taylor's testimony that Shane had been arrested for buying a sixteenth of an ounce of methamphetamine from an undercover agent in December 1995, two years before the killings. The solicitor objected on the ground of relevance and the trial judge excluded the evidence. Appellant claims the exclusion of this evidence prejudiced him because it indicated a relationship between the brothers and

Ronnie that would substantiate his claim of self-defense. We disagree.

Sheriff Taylor testified Ronnie Burkhart was out of the drug business by 1991, Ronnie did not deal in methamphetamine, and he knew of no connection between Shane's 1995 drug transaction and Ronnie. In the absence of any evidence linking Shane's drug transaction to Ronnie, the excluded evidence did not tend to make more or less probable appellant's claim that Shane would have worked for Ronnie as a hit man. *See* Rule 401, SCRE (evidence is relevant if it tends to make the existence of any fact at issue more or less probable). We find the exclusion of this evidence could not reasonably have affected the outcome of the trial. See *State v. Johnson*, 363 S.C. 53, 609 S.E.2d 520 (2005) (exclusion of evidence is not reversible error if it could not reasonably have affected outcome of trial).

### 2. Admission of evidence in sentencing phase

■ During the sentencing phase of trial, appellant objected to testimony by State's witness James Sligh, Director of Inmate Classification for the Department of Corrections, regarding the privileges available to an inmate who receives a sentence of life without parole. These privileges include access to the yard, work, education, meals, canteen, phone, library, recreation, mail, television, and outside visitors. On cross-examination, Sligh acknowledged that prison life is "very regimented" and "is not a country club." Further, appellant presented evidence through his own witness that prison is a harsh environment with violent predators where one's freedom is severely curtailed.

■ We have long held that evidence in the sentencing phase of a capital trial must be relevant to the character of the defendant or the circumstances of the crime. *State v. Copeland*, 278 S.C. 572, 300 S.E.2d 63 (1982). The jury's sole function is to make a sentencing determination based on these factors and not to legislate a plan of punishment. *State v. Johnson*, 293 S.C. 321, 360 S.E.2d 317 (1987). "Such determinations as the time, place, manner, and conditions of execution *or incarceration* ... are reserved ... to agencies other than the jury." *State v. Plath (Plath II)*, 281 S.C. 1, 15, 313 S.E.2d

619, 627 (1984) (emphasis added). Based on this reasoning, we have disallowed defense evidence regarding the process of electrocution, *State v. Plath (Plath I)*, 277 S.C. 126, 284 S.E.2d 221 (1981), and expert testimony regarding the deterrent effect of capital punishment. *State v. George*, 323 S.C. 496, 476 S.E.2d 903 (1996).

Recently, in *State v. Bowman*, 366 S.C. 485, 623 S.E.2d 378 (2005), the defendant challenged on appeal the admission of evidence regarding general prison conditions. Although we found the issue was not preserved for review, we cautioned the State and the defense bar that such evidence is not relevant to the question of whether a defendant should be sentenced to death or life imprisonment. 366 S.C. at 498–99, 623 S.E.2d at 387.

 This case was tried before our decision in *Bowman;* however, we apply that reasoning here because it is consistent with our long-standing rule that evidence in the sentencing phase of a capital trial must be relevant to the character of the defendant or the circumstances of the crime. We are aware of the tension between evidence regarding the defendant's adaptability to prison life, which is clearly admissible,[2] and this restriction on the admission of evidence regarding prison life *in general.* We note, however, that evidence of the defendant's characteristics may include prison conditions if narrowly tailored to demonstrate the defendant's personal behavior in those conditions.

 Here, unlike *Bowman*, appellant objected to the State's evidence regarding general prison conditions. Although appellant attempted to counter the testimony of the State's witness with evidence regarding the harshness of prison life, this entire subject matter injected an arbitrary factor into the jury's sentencing considerations. A capital jury may not impose a death sentence under the influence of any arbitrary

---

**2.** *See generally Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (evidence of good behavior in prison admissible in mitigation as relevant to future adaptability); *State v. Shafer,* 352 S.C. 191, 573 S.E.2d 796 (2002) (evidence of violent behavior in prison relevant to future dangerousness); *State v. Tucker,* 324 S.C. 155, 478 S.E.2d 260 (1996) (defendant's future dangerousness and his adaptability to prison life are legitimate interests in the penalty phase of a capital case).

factor. S.C.Code Ann. § 16–3–25(C)(1) (2003). When the jury is invited to speculate about irrelevant matters upon which a death sentence may be based, § 16–3–25(C)(1) is violated. *State v. Sloan,* 278 S.C. 435, 298 S.E.2d 92 (1982). Accordingly, we reverse appellant's death sentence and remand for resentencing.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

WALLER, J, concurs. PLEICONES, J., concurring in a separate opinion. TOAL, C.J., dissenting in a separate opinion in which BURNETT, J., concurs.

Justice PLEICONES:

I concur in the majority's conclusion that appellant is entitled to a new sentencing proceeding. I write separately because I believe a violation of S.C.Code Ann. § 16–3–25(C)(1) (2003) is not subject to a harmless error analysis.

I agree with the majority that the prison conditions testimony by Mr. Sligh violated our rule that evidence in the sentencing phase of a capital trial must be relevant to the character of the defendant or the circumstances of the crime. More importantly, this inadmissible evidence infused an arbitrary factor into the jury's decision to return a death sentence. Once an arbitrary matter has been presented to the jury, this Court cannot uphold the death sentence if we are to fulfill our statutory duty under S.C.Code Ann. § 16–3–25(C)(1). *State v. Shaw,* 273 S.C. 194, 209–210, 255 S.E.2d 799, 807 (1979), *overruled on other grounds* by *State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991).

The dissent argues that the statute's prohibition against imposing a death sentence obtained under the influence of passion, prejudice, or any other arbitrary factor merely recites the requirements of the Eighth Amendment. As a result, although not finding the evidence in this case to introduce an arbitrary subject to the jury, the dissent would subject violations of § 16–3–25(C)(1) to a harmless error analysis.[3]

---

**3.** This Court has acknowledged the appropriateness of harmless error analysis in capital cases where a defendant's constitutional rights are violated. *See Arnold v. State,* 309 S.C. 157, 420 S.E.2d 834 (1992).

In my opinion, this Court should not apply a standard of review for constitutional errors to statutory violations. The dissent ignores the plain language of the statute, which requires this Court to "determine whether the sentence of death was imposed *under the influence of* passion, prejudice, or any other arbitrary factor." S.C.Code Ann. § 16-3-25(C)(1) (emphasis added). We are not required to determine if appellant's cross-examination of Mr. Sligh was able to remedy any error. Once improper evidence of any kind injects an arbitrary factor into the jury's consideration, this Court cannot uphold the death sentence under § 16-3-25(C)(1). Moreover, a review for harmless error is unnecessary because by definition, evidence that implicates an arbitrary factor is prejudicial.

We must honor the General Assembly's prerogative to establish the procedure which it deems necessary to the fair administration of the death penalty. Where the legislature requires this Court to review a death sentence for possible arbitrariness, that directive should be conscientiously honored. I would thus not engage in a harmless error analysis which could potentially uphold a death sentence returned under the influence of an arbitrary factor. Accordingly, I agree with the majority's decision to reverse the death sentence and remand for resentencing.

Chief Justice TOAL:

I respectfully dissent. In my view, the introduction of irrelevant evidence in a capital sentencing proceeding does not, in and of itself, warrant reversal of Appellant's death sentence.

Although we cautioned in *State v. Bowman* that evidence relating to the conditions of incarceration should not be admitted during a capital sentencing proceeding, nothing in that case indicated a departure from the general rules governing appeals involving the admission of evidence or constitutional issues. *See* 366 S.C. 485, 498–99, 623 S.E.2d 378, 385 (2005). With this principle in mind, I believe our jurisprudence requires clarification.

That evidentiary appeals in criminal trials and questions of fundamental fairness sometimes overlap must be an easy conclusion. Even the most cursory review of this Court's

jurisprudence and federal precedent in the capital arena reveals as much. Arguments in capital cases involving the introduction of evidence will invariably be buttressed by considerations of fundamental fairness secured by the Eighth and Fourteenth Amendments. In these cases, both the evidentiary questions of state law and the federal constitutional questions are of paramount importance. Accordingly, a genuine resolution requires that these issues be given a complete discussion.

A trial court has a great deal of latitude concerning rulings on the admissibility of evidence, and a trial court's ruling on such an issue will not be reversed on appeal absent an abuse of discretion and a demonstration of prejudice. *State v. Plath,* 281 S.C. 1, 9–10, 313 S.E.2d 619, 624 (1984); *State v. Gregory,* 198 S.C. 98, 103, 16 S.E.2d 532, 534 (1941).

In this case, although the trial court admitted irrelevant evidence during Appellant's sentencing proceeding, I can find no evidence indicating that the introduction of this evidence prejudiced Appellant. Although the State improperly introduced evidence regarding the general conditions that Appellant would experience while in prison, Appellant cross-examined the State's witness at length and demonstrated that the conditions of Appellant's imprisonment would be quite severe. Specifically, Appellant was able to inform the jury that, if he was spared the death penalty, he would be subject to the second highest degree of restriction in South Carolina's prison system for the remainder of his life.[4] In short, though this evidence was irrelevant and improper, Appellant used the evidence quite effectively to argue against imposing the death penalty. Absent a showing of prejudice which resulted from the introduction of this evidence, our standards of review require us to affirm the trial court's decision.[5]

---

4. Eight pages of the record contain the State's expert's direct testimony. Appellant's cross-examination of this expert fills twenty pages of the record.

5. *Plath* further underscores my point. In that case, this Court unanimously affirmed a death sentence because these precise errors were not accompanied by any demonstration of prejudice. *See* 281 S.C. at 9–10, 313 S.E.2d at 624.

Turning to the questions of federal law, the Eighth Amendment is violated when the decision to impose the death penalty is made in an arbitrary manner, or "out of a whim, passion, prejudice, or mistake." *Caldwell v. Mississippi*, 472 U.S. 320, 329–30, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); *State v. Copeland*, 278 S.C. 572, 587, 300 S.E.2d 63, 72 (1982). Violations of the Fourteenth Amendment occur when something "so infects the trial with unfairness as to make the resulting conviction a denial of due process." *See Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Furthermore, an appellate court's inquiry does not end upon finding that a constitutional violation occurred. Very recently, the United States Supreme Court reminded us that harmless error analysis is a constitutionally sufficient rubric by which an appellate court may judge whether most constitutional violations require reversal in a criminal case. *Washington v. Recuenco*, 548 U.S. ——, 126 S.Ct. 2546, 2551, 165 L.Ed.2d 466 (2006).

In this case, I would not reach the question of whether the trial court's error in admitting the above described evidence was harmless because I would find no constitutional violations occurred. As a first matter, Appellant did not raise any constitutional objections in the trial court, and it is not clear that he raises these issues here.[6] Assuming, however, that Appellant makes such arguments, in my view, the introduction of this improper evidence did not create an impermissible risk that the jury would make the decision to impose the death penalty in an arbitrary manner, nor did it so infect Appellant's sentencing proceeding with prejudice as to render it fundamentally unfair.[7] Again, because I would find that no constitutional violations resulted from the introduction of this evidence, I do not believe this Court need decide whether any evidentiary error was harmless.

---

**6.** At trial, Appellant objected that this testimony was improper under this Court's ruling in *Plath*. That case contains no material discussion of the Eighth or Fourteenth Amendments. *Plath's* discussion of this type of evidence is best interpreted as resolving a traditional appeal of a question of the admission of evidence. *See* 281 S.C. at 14–16, 313 S.E.2d at 627.

**7.** In making this determination, I judge the effect of these evidentiary errors in the context of the entire record. *See State v. Woomer*, 277 S.C. 170, 174–75, 284 S.E.2d 357, 359 (1981).

In my view, the majority's resolution of this issue is controlled by a theme found largely in dicta beginning in *State v. Woomer.* In that case, this Court stated "[w]hen a solicitor's personal opinion is explicitly injected into the jury's deliberations as though it were in itself evidence justifying a sentence of death, the resulting death sentence may not be free from the influence of any arbitrary factor as required by S.C.Code § 16–3–25(C)(1), and by the Eighth Amendment to the United States Constitution." 277 S.C. at 175, 284 S.E.2d at 359.

I believe this Court has mistakenly seized upon the latter part of that statement and proceeded to treat § 16–3–25(C) as providing a separate standard by which this Court should judge the conduct of capital sentencing proceedings.[8] In my view, *State v. Torrence* all but openly rejects the argument that the statute's prohibition of imposing a death sentence obtained under the influence of "passion, prejudice, or any other arbitrary factor," constitutes anything other than a recital of the Eighth Amendment's requirements. *See* 305 S.C. at 68, 406 S.E.2d at 328. Furthermore, in my view, the Eighth Amendment's requirements are primarily concerned with the ultimate result in capital cases, which is "preventing the imposition of excessive and disproportionate punishment upon the individual prisoner." *State v. Copeland,* 278 S.C. 572, 590, 300 S.E.2d 63, 73–74 (1982). Thus, even if *Torrence* did not reject this proposition, I would decline to view 16–3–25(C) as proscribing a standard of review that is independent from the Eighth Amendment. Instead, I would interpret the statute to prohibit the imposition of the death penalty only in those situations where it would offend the Constitution. In my view, a separate standard is not necessary.[9]

---

8. This principle has consistently re-appeared in our precedent. *See Thompson v. Aiken,* 281 S.C. 239, 240, 315 S.E.2d 110, 110 (1984); *State v. Sloan,* 278 S.C. 435, 438, 298 S.E.2d 92, 93 (1982); *State v. Smart,* 278 S.C. 515, 517, 299 S.E.2d 686, 687 (1982) (overruled on other grounds by *State v. Torrence,* 305 S.C. 45, 70, 406 S.E.2d 315, 329 (1991)); and *State v. Butler,* 277 S.C. 543, 544, 290 S.E.2d 420, 420 (1982) (overruled on other grounds by *Torrence,* 305 S.C. at 70, 406 S.E.2d at 329).

9. I do not necessarily question the holdings in the cases I have cited, only the reasoning. Any number of errors can infect a trial with unfairness to such a degree as to violate the Eighth and Fourteenth Amendments. These include (1) the introduction of overly inflammato-

494

Our pronouncement disfavoring this evidence in *Bowman* was nothing new. *See Plath,* 281 S.C. at 15, 313 S.E.2d at 627 ("It should not be necessary in the near future ... to remind the bench and bar of the strict focus to be maintained in the course of a capital sentencing trial."); and *Smart,* 278 S.C. at 526, 299 S.E.2d at 692–93 ("While this Court approves zealous representation ... it is important in capital cases to maintain strict focus upon the particular characteristics of the specific crime and the unique attributes of the defendant."). In reversing this case, I believe we treat the disapproval of this type of evidence as though it were a novel development, and that we unnecessarily depart from an established course of analysis that is easily tied to defined doctrines. In my view, reversing Appellant's sentence uses *Bowman* to propagate a rule that inappropriately presumes prejudice in many cases and is unjustified given the existing constitutional framework.[10]

The majority and concurrence presume what they purport to establish, which is that § 16–3–25(C)(1) requires reversal when improper evidence is *introduced* in a capital sentencing proceeding. Were that the General Assembly's intention, I believe it surely would have spoken in terms of an arbitrary factor's "presence" instead of its "influence." Appellate courts are ill-equipped to speculate about the influence improperly admitted evidence might have exerted on a jury's determination. Therefore, in my view, the most prudent course in these cases is to tie the statutory review requirement to the established guideposts provided by the relevant constitutional jurisprudence. Today, the majority and concurrence endorse a rule that is markedly stricter than the constitution requires, is contrary to at least two of this Court's prior decisions, and plays far too loosely with the language of the statute.

---

ry evidence and (2) arguments which impermissibly appeal to the passions or prejudices of a jury.

10. Coincidentally, the view taken by the concurrence is contrary to our opinion in *Bowman* and seems to embrace a rekindled form of *in favorem vitae* review. This view, if applied in *Bowman*, would surely have commanded the Court to at least deal with the merits of Bowman's claim regarding this "prison conditions" testimony rather than disposing of his claim on error preservation grounds. *See* 366 S.C. at 498, 623 S.E.2d at 385.

For these reasons, I would hold that the trial court erred in admitting evidence relating to the conditions of incarceration during Appellant's capital sentencing proceeding, but I would affirm Appellant's death sentence.

BURNETT, J., concurs.