703 S.E.2d 226

**The STATE, Respondent,**

v.

**Andres Antonio TORRES, Appellant.**

No. 26904.

Supreme Court of South Carolina.

Heard Sept. 22, 2010.
Decided Dec. 13, 2010.

620

Senior Appellate Defender Joseph L. Savitz, III, South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Brendan J. McDonald, Office of the Attorney General, all of Columbia; Harold W. Gowdy, III, Seventh Circuit Solicitor's Office, of Spartanburg, for Respondent.

Justice HEARN.

Anthony Andres Torres ("Torres") appeals the circuit court's admission into evidence of autopsy photographs and a videotape recording during the sentencing phase of his capital murder trial. Torres contends the photographs should have been excluded based on South Carolina Rule of Evidence 403, and the videotape recording should have been excluded based on either Rule 403 or Section 16–3–25(C)(1) of the South Carolina Code (2003). We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In May of 2007, Union County Emergency Services received a call reporting a one-car accident involving a van. Subsequently, Torres was identified by witnesses in a police photo line-up as the driver of the van.

Officers arrived on the scene of the accident shortly after Torres fled the area and discovered that the van was registered in the name of Ann Emery. Officers found Ann and her husband Charles Ray Emery's (collectively "the Emerys") belongings in the van, and based on that discovery, requested a welfare check on their residence.

Upon arriving at the Emerys' residence and getting no response at the front door, officers walked around the house to check for signs of forced entry. Finding none, officers entered the residence through an unsecured door, immediately smelled the odor of gasoline, and noticed the house felt hot. Officers discovered the body of Charles Ray Emery lying face down on the mattress in the bedroom. The body of Ann Emery was discovered on the floor beside the bed after EMS arrived on scene. Due to the extent of their injuries, neither body could be identified at the scene, and identification was accomplished at the hospital during an autopsy. Due to the compromising position of Ann Emery's body at the scene, a sexual assault kit was administered. Semen taken from Ann Emery's body by way of the kit matched DNA of Torres. Torres was indicted on: two counts of armed robbery; two counts of murder; one count of burglary of a dwelling, first degree; one count of attempt to burn; and one count of criminal sexual conduct, first degree. A jury trial was held, resulting in a verdict of guilty on all counts.

During the sentencing phase, the State sought to introduce a video recording showing prison guards using pepper-spray to force Torres to comply with a pat-down request. The events documented on the tape occurred the night that Torres was found guilty. Torres refused to allow prison guards to touch him when the guards requested that he place his hands on the wall for a pat-down. The guards explained that the pat-down was policy and indicated that if he continued to refuse, Torres would be pepper-sprayed. Torres continued to resist after several requests for compliance, so the guards

used pepper-spray to restrain him. Torres objected, citing Section 16–3–25(C)(1) of the South Carolina Code (2003); Rule 403, SCRE; and a violation of *Miranda v. Arizona*. However, the trial judge overruled Torres' objections and admitted the video recording. Additionally, the State introduced sixteen autopsy photographs of the Emerys. Torres objected again, citing Rule 403. The trial judge excluded three of the photographs based on Rule 403 and admitted the remaining thirteen.

The defense called various witnesses who testified regarding Torres' mental issues throughout his childhood and adult life and his substance abuse problems. James Aiken, a prison consultant, testified nothing in Torres' records or in the video recording shown by the State gave him any concern about Torres' ability to adapt to life in prison because wardens would be able to manage his behavior.

At the end of the sentencing phase, the jury recommended Torres be sentenced to death. The trial judge sentenced Torres to death, finding the evidence warranted the imposition of the death penalty, and the imposition was not the result of prejudice, passion, or any other arbitrary factor.

## ISSUES

Torres raises two issues on appeal:

1. Did the trial judge commit reversible error at sentencing by allowing the State to introduce autopsy photographs of the victims in violation of Rule 403, SCRE?

2. Did the trial judge commit reversible error at sentencing by allowing the State to introduce a video recording of Torres being pepper-sprayed and subdued in the detention center in violation of Section 16–3–25(C)(1) of the South Carolina Code (2003) and Rule 403, SCRE?

## STANDARD OF REVIEW

Generally, "[i]n criminal cases, an appellate court reviews errors of law only and is bound by the factual findings of the trial court unless clearly erroneous." *State v. Bryant*, 372 S.C. 305, 312, 642 S.E.2d 582, 586 (2007). "The relevance, materiality, and admissibility of photographs are matters with-

in the sound discretion of the trial court and a ruling will be disturbed only upon a showing of an abuse of discretion." *State v. Shuler,* 353 S.C. 176, 184, 577 S.E.2d 438, 442 (2003).

## LAW/ANALYSIS

### I. *Autopsy Photographs*

■ Torres contends the trial judge should have excluded the autopsy photographs of the Emerys because the photographs were more prejudicial than probative in violation of Rule 403, SCRE, and only served to inflame the emotions of the jury. We disagree, as we do not believe the trial judge abused his discretion in admitting the photographs.

■ Photographs calculated to arouse the sympathy or prejudice of the jury should be excluded if they are irrelevant or not necessary to substantiate material facts or conditions. *State v. Brazell,* 325 S.C. 65, 78, 480 S.E.2d 64, 72 (1997). Under Rule 403, SCRE, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." To be classified as unfairly prejudicial, photographs must have a "tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Franklin,* 318 S.C. 47, 55, 456 S.E.2d 357, 361 (1995) (internal quotation omitted). In the sentencing phase of a capital murder trial, the scope of the probative value is much broader than the guilt phase. *See State v. Kornahrens,* 290 S.C. 281, 289, 350 S.E.2d 180, 186 (1986).

■ The State offered several autopsy photographs into evidence during the sentencing phase of the trial. The State argues that the photographs were properly admitted because they corroborated witness testimony and were introduced to illustrate the circumstances of the crime and the character of the defendant. It is well settled in this state that "[i]f the photograph serves to corroborate testimony, it is not an abuse of discretion to admit it." *State v. Nance,* 320 S.C. 501, 508, 466 S.E.2d 349, 353 (1996); *see also State v. Holder,* 382 S.C. 278, 290, 676 S.E.2d 690, 697 (2009). In addition, this Court has held that autopsy photographs may be presented to the jury in an effort to show the circumstances of the crime and character of the defendant. *See State v. Rosemond,* 335 S.C.

593, 597, 518 S.E.2d 588, 590 (1999); *State v. Burkhart*, 371 S.C. 482, 487, 640 S.E.2d 450, 453 (2007).

The doctor who performed the autopsy used the introduced photographs during his testimony to illustrate the number of injuries, location of the injuries, and manner in which the injuries were committed. We do not suggest that these autopsy photographs are mild and easy to view; some of the photographs are close-ups of the victims' injuries and are graphic in nature. However, the purpose of the close-ups was to help identify the nature of each particular injury. The net effect of the photographs was to show what Torres did to the Emerys, which goes straight to circumstances of the crime.

Moreover, the trial judge did exercise his discretion by excluding three of the State's photographs, ruling that they were duplicative and prejudicial. While the admitted photographs graphically depict the injuries of the victim, this was a particularly horrific crime, and the admission of the photographs did not unduly prejudice the jury. *See Brazell*, 325 S.C. at 78, 480 S.E.2d at 72. Accordingly, we affirm the trial judge's decision to admit them.

Although we affirm the admission of the photographs, we take this opportunity to address an area of growing concern to this Court. The photographs at issue in this case, while admissible, are at the outer limits of what our law permits a jury to consider. Moreover, the State also sought to introduce evidence in the form of an autopsy dissection photo at trial, which the trial judge wisely excluded. Today, we strongly encourage all solicitors to refrain from pushing the envelope on admissibility in order to gain a victory which, in all likelihood, was already assured because of other substantial evidence in the case.

## II. *Video Recording*

As part of its case-in-chief during the sentencing phase, the State introduced a video recording of Torres in prison. Torres argues that the introduction of this video recording injected an arbitrary factor into the sentencing phase in violation of section 16–3–25(C)(1) and Rule 403, SCRE. We disagree.

As mentioned above, a trial judge has wide latitude concerning the admissibility of evidence. *See Rosemond*, 335

S.C. at 596, 518 S.E.2d at 589–90. Nonetheless, section 16–3–25(C)(1) establishes that a death sentence must be vacated if it was "imposed under the influence of passion, prejudice, or any other arbitrary factor."

■ Evidence admitted during the sentencing phase of a capital murder trial must be relevant to the character of the defendant or the circumstances of the crime. *See Burkhart,* 371 S.C. at 487, 640 S.E.2d at 453; *State v. Copeland,* 278 S.C. 572, 587, 300 S.E.2d 63, 72 (1982). "[A]daptability to prison life ... is clearly admissible [ ] and ... evidence of the defendant's characteristics may include prison conditions if narrowly tailored to demonstrate the *defendant's personal behavior* in those conditions." *Burkhart,* 371 S.C. at 488, 640 S.E.2d at 453 (emphasis added); *see also State v. Tucker,* 324 S.C. 155, 174, 478 S.E.2d 260, 270 (1996) (determining that defendant's future dangerousness and his adaptability to prison life are legitimate interests in the sentencing phase of a capital case).

■ The video recording in this case demonstrates exactly the type of evidence that *Burkhart* permits. The video shows Torres' behavior in a routine prison situation where he repeatedly refused to accede to prison guards' numerous requests to submit to a pat-down. Because the video recording is probative on the issue of Torres' adaptability to prison life, which is a legitimate concern in the sentencing phase of a capital case, the video does not introduce an arbitrary factor into the jury's determination.

■ Nonetheless, this evidence is still subject to Rule 403, SCRE. The appellate court reviews a trial judge's ruling on admissibility of evidence pursuant to an abuse of discretion standard and gives great deference to the trial court. *See State v. Holland,* 385 S.C. 159, 171, 682 S.E.2d 898, 904 (Ct.App.2009). We believe the trial judge's ruling was correct because the probative value far outweighs any prejudice stemming from the video and any unfair prejudice is *de minimis.* The video recording presented the jury with competent evidence to showcase Torres' character and adaptability to prison life by illustrating Torres in an actual routine prison situation. While prior testimony had already established Torres' prior convictions and his problems with maintaining parole condi-

tions, this video recording was unique in its application to a specific parameter held by this Court to not be arbitrary in the sentencing phase of a capital murder trial. *See Burkhart,* 371 S.C. at 488, 640 S.E.2d at 453.

As his final argument, Torres claims that introducing the video recording gave undue emphasis to the evidence, relying on *State v. Gulledge,* 277 S.C. 368, 287 S.E.2d 488 (1982). We find *Gulledge* is readily distinguishable from the present case. *Gulledge* held that allowing the jury to take a tape recording transcript into the jury room placed undue emphasis on that evidence. *Id.* at 371–72, 287 S.E.2d at 490. Torres is not arguing that the jury should not have been allowed to take the video into the jury room; rather he argues the video should not have been introduced in the first place. Nothing in *Gulledge* supports the idea that the tape recording was not appropriately introduced. Instead, *Gulledge* provides that the trial judge should not have allowed the jury to take the tape transcripts into the jury room. Furthermore, the video recording here goes to Torres' adaptability to prison life and character, factors which are clearly relevant to the jury's sentencing decision. *See Burkhart,* 371 S.C. at 488, 640 S.E.2d at 453. Therefore, the trial judge properly allowed the video into evidence.

## PROPORTIONALITY REVIEW

■ Pursuant to Section 16–3–25(C) of the South Carolina Code (2003), we must conduct a proportionality review. We find the death sentence was not the result of passion, prejudice, or any other arbitrary factor. Furthermore, a review of other decisions demonstrates that Appellant's sentence is neither excessive nor disproportionate. *See, e.g., State v. Allen,* 386 S.C. 93, 687 S.E.2d 21 (2009) (involving double murder and arson); *State v. Woods,* 382 S.C. 153, 676 S.E.2d 128 (2009) (imposing the death penalty for murder, first degree burglary, and criminal sexual conduct).

## CONCLUSION

For the aforementioned reasons, we affirm Appellant's death sentence.

TOAL, C.J., BEATTY and KITTREDGE, JJ., concur.
PLEICONES, J., concurring in result only.