13864

STACK v. PRUDENTIAL INSURANCE CO. OF AMERICA

(174 S. E., 911)

*Messrs. Osborne & Butler*, for appellant,

*Messrs. Jennings L. Thompson* and *Nicholls, Wyche & Russell*, for respondent,

June 9, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This action was brought to recover of the defendant insurance company the benefits of a group policy which had been issued by the company, to its employees, which included

plaintiff, and which provided certain benefits in the event of his total disability. The company denied liability on several grounds, to wit, that plaintiff was not then, nor had been totally disabled to do his accustomed work in his accustomed way; that if plaintiff had ever suffered total disability, it had not occurred during the life of the policy; that plaintiff had not complied with the terms and conditions of the policy by giving the required notice and proof of disability; that total disability, if any existed, occurred after plaintiff had left the employ of the company; and because the action was prematurely brought.

The case was tried by Judge Sease and a jury and a verdict was given for the plaintiff. During the trial defendant moved for direction of a verdict in its favor on the grounds stated in the record, which motion was refused. After verdict rendered, defendant moved for new trial on grounds substantially the same as those given in the motion for directed verdict, and additional grounds which included error in the admission of certain testimony. This motion was refused, and this appeal followed the entry of judgment on the verdict.

The issues for determination by the Court are stated by appellant's argument to be:

1. Error in admitting the testimony of Dr. Gable and refusing to strike it from the record.

2. Error in refusing to direct a verdict for defendant on the ground that the alleged disability, if it existed, did not occur during the time when the plaintiff was employed by the defendant and when his insurance was in force.

Error in refusing to grant defendant's motion for directed verdict on the ground that plaintiff had failed to submit proofs of his alleged disability as required by the terms of the policy as a condition precedent.

5. Error in refusing to grant defendant's motion for directed verdict on the ground that even if the plaintiff was suffering from some disability, there was no showing that it was permanent.

The essential element of this case was this: Was, and is, plaintiff—now respondent—suffering from epilepsy?

There is proof of other disorders from which he suffered but no proof that these produced total disability. His right to recover in this action depended upon his presenting competent evidence that he was suffering from epilepsy of such nature as to produce total disability—that type or form of epilepsy known as grand mal. The plaintiff had served in the Army overseas during the war. In December, 1930, and again in November, 1931, he was admitted to the government hospital at Lake City, Fla. Dr. John D. Gable is on the medical staff of that hospital. His testimony was taken by deposition as a witness on behalf of the plaintiff. He was asked:

"As a consequence of your observation, what diagnosis did you make as to his condition with particular reference as to whether or not he had epilepsy."

He answered:

"His final diagnosis was epilepsy grand mal."

On cross-examination he said that on the first visit of plaintiff to the hospital the witness diagnosed plaintiff's case as one of hysteria. He testified that plaintiff's symptoms on that visit did not suggest epilepsy—he had no seizure there. Witness was asked: "How many seizures, as you call them, did he have that you saw personally in 1931, while he was here?" He answered: "Personally I did not observe any."

Defendant's counsel moved "to strike out all testimony relating to the doctor's conclusions and diagnosis with respect to the seizure and his conclusion and diagnosis thereof upon the ground, first that he testifies that he did not see the seizure, therefore has no personal knowledge, and the same must be based on hearsay, and move to strike out the testimony relating to the diagnosis of epilepsy on the ground that the witness has testified that he can only make a diagnosis positively from observation of a patient suffering in a seizure." The witness was further asked:

"You yourself have never seen him in a seizure, have you, Doctor?"

He answered: "No, sir." "Except by hearsay you have no knowledge of the extent or frequency of any seizure which he may have claimed to have had, do you?"

Answer: *"Our system of examining in this hospital authorizes the use of nurses' notes and reports of other physicans to be considered as authentic. It was in that way I made my diagnosis."* (Italics added.)

When the case was called for trial, the objections which had been made and noted at the taking of the deposition were presented to the Court, as they pertained to certain testimony of Dr. Gable, among them the following:

"Q. Except by hearsay you have no knowledge of the extent or frequency of any seizure he may have claimed to have had, do you? A. Our system of examining in this hospital authorizes the use of nurses' notes and the report of other physicians to be considered as authentic. It was in that way I made my diagnosis."

The motion to strike out was overruled, his Honor saying: "I think to get the best evidence is all you can do."

The witness had testified that he had never seen plaintiff in an attack and that epilepsy could only be diagnosed by observing one in a seizure. When, therefore, he diagnosed this case as epilepsy grand mal, by his own statement he did so upon the information he had received from others. His opinion was, clearly, based upon hearsay.

The question whether plaintiff had epilepsy which produced total disability was the acute issue of the case. He had been treated by some four or five physicians for various physical disorders over a number of years adjacent to this period. None of them had seen him in an epileptic seizure, nor had he complained to them of such seizures. He had been in hospitals at Memphis, Columbia, and Washington and it does not appear that it was discovered that he had epilepsy. There is evidence in the record of witnesses, laymen, who

testify to having seen him when he had seizures the nature of which are declared by medical men to be symptomatic of epilepsy. It appears then that the evidence of Dr. Gable was of great significance, and its admissibility was a matter of prime importance.

Wigmore, the great writer on the Law of Evidence, says:

"The Hearsay rule predicates a contrast between assertions untested and assertions tested; it insists upon having the latter. What is the nature of the test thus required by the Hearsay rule? The fundamental test, shown to be invaluable, is the test of *cross-examination.* * * * The theory of the Hearsay rule is that many possible deficiencies, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness may be brought to light and exposed by the test of *cross-examination.* * * * It is here sufficient to note that the Hearsay rule as accepted in our jurisprudence, signifies *a rule rejecting assertions offered testimonially, which have not been in some way subjected to the test of cross-examination.*" 2 Wigmore, 1674, 1675.

The author cites the following from Chief Justice Marshall in *Mima Queen v. Hepburn,* 7 Cranch, 290, 295, 3 L. Ed., 348:

"That this species of testimony supposes some better testimony which might be adduced in the particular case, is not the sole ground of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover, combine to support the rule that hearsay evidence is totally inadmissible." 2 Wigmore, 1679.

No opportunity was given the defendant to cross-examine the nurse upon whose notes and reports Dr. Gable predicated his diagnosis of epilepsy grand mal; no opportunity to test her accuracy, her competency, her reliability, or her experience. And yet defendant is sought to be held bound by an opinion of the doctor founded upon her state-

ments to him. He, an experienced medical man, declares that he could not positively diagnose a case of epilepsy unless he saw the patient in a seizure, but defendant must be bound, it is contended, by the statements of a nurse of whose ability to understand and diagnose epilepsy there is no particle of proof.

"In a subcontractor's action against a contractor to recover for the construction of certain manholes and flush tanks in sewer system, where plaintiff had testified that his work was satisfactory to the city, a report of a city inspector was properly excluded as hearsay." *Jowers v. Dysard Construction Co.,* 113 S. C., 84, 100 S. E., 892.

"The witness started by saying, 'I learned from the government authorities out there.' Again, 'I was not going to say what anybody said to me, but what I learned.' " This Court on appeal said: "The testimony was incompetent. It was a conclusion based upon hearsay testimony." *Freeman v. Chavis,* 113 S. C., 326, 101 S. E., 849, 851. See, also, *Murdock v. Mfg. Co.,* 52 S. C., 428, 29 S. E., 856, 30 S. E., 142; *Easler v. So. Ry. Co.,* 59 S. C., 311, 37 S. E., 938; *McCown v. Muldrow,* 91 S. C., 523, 74 S. E., 386-391, Ann. Cas., 1914-A, 139.

Appellants cite in their brief the case of *Baird v. Reilly,* 92 F., 884, decided by Circuit Court of Appeals for Second Circuit, where it was held, that: "It was proper to exclude from the consideration of the jury that part of the hospital record which consisted of the remarks of the nurse who attended the plaintiff."

In the case at bar where Dr. Gable and the nurse officiated was a government hospital, and it is true that the records and proceedings thereabout cannot be disclosed except with the consent of the government. Dr. Gable testified that he had such consent. It is a fair inference that the influence which procured for Dr. Gable permission to testify, could have procured the same indulgence for the nurse, or at least have procured leave to introduce the report of the nurse. However that is not now material.

There are other exceptions made by the appeal, but all of them depend upon the review and construction of the evidence. Inasmuch as the case must go back, it is thought to be best not now to determine them.

It is the judgment of the Court that the judgment of the Court below be reversed and the case remanded for a new trial.

MR. CHIEF JUSTICE BLEASE, MESSRS. JUSTICES STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.