19161

The STATE, Respondent, v. Emily Johnston JAMES, Appellant

(179 S. E. (2d) 41)

*Messrs. Felix L. Finley, Jr.,* and *Joseph W. Board* of Pickens, *for Appellant,*

February 2, 1971.

Moss, Chief Justice.

Emily Johnston James, the appellant herein, was convicted at the 1969 September Term of the Court of General Sessions for Pickens County, under an indictment containing two counts, charging that on December 25, 1968, and January 2, 1969, she did administer to or cause to be taken by Clyde E. James, her husband, arsenic poison with intent to kill him, in violation of Section 16-56 of the 1962 Code of Laws.

It is the contention of the State that the appellant put arsenic poison in the food or coffee of her husband at a family Christmas dinner on the evening of December 25, 1968, and that she put arsenic in the fruit drink which she gave to her husband in the Pickens Hospital on January 2, 1969. It was necessary, in order to convict the appellant, for the State to prove ingestion of arsenic by Clyde James and the criminal agency of the appellant in administering such to him.

The State, in presenting its case in the court below sought to prove the ingestion of arsenic by Clyde James through the testimony of Doctors Mustian and Ludvigsen. These witnesses related that Clyde James was being treated at the Greenville General Hospital for polyneuritis, and during the course of his treatment a twenty-four hour urine collection was taken from him on or about February 11, 1969, and forwarded by mail to a laboratory located in the state of California for chemical analysis. They further testi-

fied that this analysis was completed on February 18, 1969, and a report thereof was sent to the Greenville General Hospital and there copied into Clyde James's hospital record. These doctors were permitted to testify, over the objection of the appellant on the ground that such testimony was hearsay, regarding the arsenic content found in the urine specimen taken from Clyde James, based solely upon the California laboratory report as it appeared in his record in the Greenville General Hospital. It was admitted by these physicians that they did not know the person or persons who had made the chemical analysis of the urine specimen, nor the method employed in determining the arsenic content thereof. They further admitted that such chemical analysis was not made under their supervision nor could they vouch for the validity of the report. In connection with the foregoing, we quote the following from the testimony of Dr. Mustian:

"Q. Dr. Mustian, do you know of your own knowledge that this man ever had any arsenic in him?

"A. I don't know he ingested any, no.

"Q. The only way you say he might have had some arsenic in him, or have any information you can give to this court—is the laboratory report from California?

"A. That's right.

"Q. You don't know who made that report?

"A. No."

We have carefully examined the entire record in this case and apart from the testimony of the two doctors which was based solely upon the California report as it appeared in the Greenville General Hospital record, there is no evidence that any arsenic was administered to or ingested by Clyde James.

At all appropriate stages of the trial, the appellant objected to the testimony of the two doctors as to the arsenic content found in the urine of Clyde James on the ground that such was hearsay. At the close of all the testimony a

motion was made to strike from the record the testimony of these doctors as being hearsay and there being no competent evidence of the guilt of the appellant, her motion for a directed verdict of acquittal should have been granted. All of these motions were overruled and the appellant assigns error.

The question for determination by this court is whether the trial judge committed reversible error in permitting the two doctors to testify as to the arsenic content of the urine of Clyde James, when such was based solely upon a report of a chemical analysis made by a third party who was not called as a witness. The appellant asserts that the testimony was inadmissible under the hearsay rule and was prejudicial to her.

In *Cooper Corporation v. Jeffcoat,* 217 S. C. 489, 61 S. E. (2d) 53, this court said:

"Hearsay evidence is inadmissible according to the general rule. Various reasons have been assigned for requiring the exclusion of this kind of testimony. The real basis for the exclusion, however, appears to lie in the fact that hearsay testimony is not subject to the tests which can ordinarily be applied for the ascertainment of the truth of testimony. It is said that a statement by hearsay is one made without the sanction of an oath and without the declarant being under the responsibility to answer for the crime of perjury in making a willful falsification. This objection loses some of its force when it is remembered that even a statement made under oath or in the course of a judicial proceeding between parties other than the parties to the suit is inadmissible as hearsay unless within an exception to the rule. Probably the most important objection to admitting hearsay testimony in evidence is that the declarant is not present and available for cross examination. The exercise of the right to cross examine the witness of the adverse party is regarded as, and is in fact, essential in the administration of justice to discover the falsity of testimony and prevent the

admission of perjured testimony. This right is not available in respect of hearsay since the declarant is not present in court. Moreover, both the court and the jury are without opportunity to, test the credibility of hearsay statements by observing the demeanor of the person who made them."

Where tests or analyses are conducted the cogent elements are the results, methods used and qualifications of the tester. The method used and the qualifications of the tester give the results their veracity. In the instant case Doctors Mustian and Ludvigsen were not testifying from their own knowledge concerning the chemical analysis of Clyde James's urine sample, as they knew nothing about such analysis other than what they read in the report. The individual who made the analysis and arrived at the results was not before the court and could not be cross-examined about the methods he used, his qualifications to make the analysis, or his ability to, interpret the results. Doctors Mustian and Ludvigsen were strangers to the evidence bearing on the validity of the California laboratory report, as they knew nothing save through hearsay. Cf. *Mehochko v. Gold Seal,* 66 Ill. App. (2d) 54, 213 N. E. (2d) 581, 19 A. L. R. (3d) 1003.

Where the results of tests or analyses are offered to prove an essential element of a crime or connect a defendant directly with the commission of a crime, such results must be substantiated by the person who conducted the tests or analyses. Otherwise, the effect of their admission would be to allow a witness to testify without being subject to cross examination, and thus deprive the accused of his constitutional right to be confronted with and to cross examine the witness against him. *State v. Matousek,* 287 Minn. 344, 178 N. W. (2d) 604; 40 Am. Jur. (2d) Hospitals and Asylums, Section 43, page 883. The hearsay rule signifies a rule rejecting assertions offered testimonially which have not been in some way subjected to the test of cross examination. *Stack v. Prudential Ins.*

*Co.,* 173 S. C. 81, 174 S. E. 911. In the *Stack* case this court held that a physician's testimony that he diagnosed a patient's condition as epilepsy grand mal by using nurses' notes and other physcians' reports was held incompetent as hearsay.

In addition to relying upon the law of this State, we point to the pertinent case of *Depfer v. Walker,* 125 Fla. 189, 169 So. 660, where it was said:

* * * that in a proper case such an examining physician may, under the order of the court, have a competent technician, pathologist, toxicologist, or other physician make a miscroscopic or bacteriological examination or analysis of various body fluids, organs, or elements, and may send samples or specimens thereof to adequately equipped laboratories for that purpose, and that when properly made the results of such an examination or analysis are admissible in evidence, but held that because of the rule against hearsay, the report of a chemist, bacteriologist, or laboratory technician as to the result of an examination so made by him is not competent evidence, and the doctor appointed by the court cannot give testimony based solely on a report of that nature. * * *.

We are of the opinion that the above language represents a proper statement of the rule prohibiting the admission into evidence of a report made by an independent third party, who was not present as a witness, and not subject to cross examination, as to the test or experiment carried out by him. In this regard see our case of *Cooper Corporation v. Jeffcoat, supra,* which held that written reports of tests made by persons not offered as witnesses were inadmissible as hearsay.

Based on the above cited authorities, it is our conclusion that the trial judge committed error in admitting the testimony of Doctors Mustian and Ludvigsen pertaining to the chemical analysis of Clyde James's urine sample, and since there is no other sufficient evidence

to support a conviction, the judgment of the lower court is, accordingly, reversed and the cause remanded for entry of a judgment of acquittal of the appellant.

Reversed and remanded.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.