202 N.J. Super. 215 (1985)
494 A.2d 350
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TIMOTHY R. FLYNN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 1985.
Decided June 21, 1985.
*216 Before Judges PRESSLER, BRODY and RICHARD S. COHEN.
John C. Cornish argued the cause for appellant.
Frank J. Busci, Assistant Prosecutor, argued the cause for respondent (Howard A. McGinn, Warren County Prosecutor, attorney).
The opinion of the court was delivered by RICHARD S. COHEN, J.A.D.
Defendant was convicted in the Phillipsburg Municipal Court of driving while under the influence of alcohol, contrary to N.J.S.A. 39:4-50. In addition to proof that defendant operated a vehicle, the State produced testimony that blood was drawn from him at a local hospital and submitted by the Phillipsburg Police Department for analysis by the State Police Forensic Science Bureau. The only proof of the outcome of the analysis was a single page printed form, entitled "Laboratory Report" and bearing an illegible signature. It was allowed in evidence over defendant's objection that it was inadmissible hearsay. It stated that a toxicological analysis of defendant's blood was positive for ethyl alcohol at the level of 224%. The report also bore dates of analysis and distribution and filing information. It contained nothing relating to the method of testing, monitoring of test accuracy or qualifications of the analyst. Without the report, there was insufficient evidence to convict defendant of the charge against him.
*217 On appeal, the Law Division expressed doubts of the propriety of the evidence but felt bound to uphold its admission on the basis of prior rulings of this court. It therefore convicted defendant. On defendant's appeal, we now reverse.
The admissibility of laboratory reports to provide essential evidence of crimes and quasi-crimes is an unsettled issue in New Jersey. Cf. State v. Moore, 158 N.J. Super. 68, 75 (App. Div. 1978). Two rules of evidence are involved. Evid.R. 63(13) admits business entries as exceptions to the hearsay rule. Business entries are writings offered as memoranda of acts, conditions or events made at or about the time in the regular course of business and are admissible if the sources of information and the method and circumstances of preparation are such as to justify admission. Evid.R. 63(15)(a) admits, also as hearsay exceptions, written reports of public officials of acts done or acts, conditions or events observed if the performance of the act or the observations and the written report thereof are within the scope of the official's duty. There is a substantial area of overlap between the two rules, with official records often qualifying for admission under both of them.
There are three reported New Jersey cases in which laboratory reports were admitted to prove essential facts. State v. Martorelli, 136 N.J. Super. 449 (App.Div. 1975), certif. den. 69 N.J. 445 (1976); State v. Soney, 177 N.J. Super. 47 (App.Div. 1980), and State v. Malsbury, 186 N.J. Super. 91 (Law Div. 1982).
Martorelli approved the admission, as a business entry, of a hospital laboratory report of defendant's blood alcohol level in a prosecution for driving while intoxicated. The court was not called upon to say whether the "circumstances of [the] preparation of the report," Evid.R. 63(13), would have barred admission if the laboratory were operated by a law enforcement agency instead of a hospital.
Soney involved a state police laboratory report which was admitted in a prosecution for causing death by auto. The State *218 charged that the defendant had failed to take medication which he knew was necessary to prevent akinetic attacks and that the onset of an attack caused the fatal collision. The State offered a State Police laboratory blood test showing defendant's blood to be free of drugs. The Appellate Division said the report was admissible as a business entry, citing Martorelli. However, Soney's authority for the admissibility of police laboratory reports is weakened by two factors. The first is that the report was admitted on the testimony of the supervising forensic chemist of the State Police laboratory who explained and interpreted it. The court's opinion does not say if the chemist was questioned about the preparation and methodology of the report, but he was certainly available for such questioning. The second factor is that nothing in the opinion shows that defendant objected to admission on hearsay grounds. Soney seems, therefore, to deal with this issue only in dictum.
Malsbury was a prosecution for possession of marijuana. The trial court held admissible as an official record a police laboratory report identifying a substance as marijuana. It also held that admission of the report did not violate defendant's right to confront witnesses guaranteed by the Sixth Amendment.
In two reported New Jersey cases, police laboratory reports were excluded from evidence. State v. Kraft, 134 N.J. Super. 416 (Cty.Ct. 1975), and State v. Matulewicz, 198 N.J. Super. 474 (App.Div.), certif. granted 99 N.J. ___ (1985). Kraft was a prosecution for driving while intoxicated. The court denied admission to a State Police laboratory report showing defendant's blood alcohol level on two grounds. One of them was the absence of authentication. The other was that admission of the report would deprive defendant of the constitutional right to confront the witnesses against him.
Only a few months ago, Matulewicz was decided. It was a prosecution for possession of marijuana. The Appellate Division held inadmissible as an official report a State Police *219 laboratory report identifying a substance as marijuana. In a thorough opinion, the court reasoned that the official report exception to the hearsay rule was not intended to permit this kind of shortcut. The heart of the court's opinion was this:
Here we are not concerned with routine observations of acts, conditions or events observed or recorded by presumably neutral public officials. We are concerned here with the examination and evaluation of crucial evidence against a defendant made after the commencement of a criminal prosecution and for use in that prosecution. The marshalling, evaluation, and presentation of evidence is the major step in the adversarial process of criminal prosecution. Simply because this is the daily business of the prosecutor, the police officer, or the forensic chemist, does not bring this within the "official observations" exception found in Evid. R. 63(15)(a). The special trustworthiness and expediency rationales for this hearsay exception are not sufficient to overcome the State's traditional duty in a criminal prosecution to prove every element of the offense beyond a reasonable doubt by competent evidence. 198 N.J. Super. at 477-478.
We subscribe to the views expressed in Matulewicz and believe it unnecessary to traverse at length the same ground so well covered in that opinion. We add only the following.
There are two key factors present in Matulewicz and in the present case. The first is that the fact sought to be proved by the proffered evidence was essential to the prosecution.[1] In Matulewicz, it was the illegal nature of the substance possessed. Here, it was the level of blood alcohol. That is very different from documentary proof which has been admitted as evidence of such peripheral matters as the operability of a breathalyzer, State v. McGeary, 129 N.J. Super. 219 (App.Div. 1974), or the exact length of a half-mile road segment. State v. Kalafat, 134 N.J. Super. 297 (App.Div. 1975).
The second factor is that the evidence sought to be admitted was produced by a governmental agency whose business is the prosecution of crime. Such evidence has been admitted in only *220 one reported case in New Jersey, Malsbury, a trial court opinion. Soney treats the matter only in dictum. Unlike the hospital laboratory in Martorelli, which exists primarily as an aid to diagnosis and treatment of patients, a police laboratory exists to test and produce evidence for governmental prosecuting agencies. The difference is a major one, which bears on the neutrality and thus the reliability of the laboratory analyses. We see no reason to interpret Evid.R. 63(13) and 63(15)(a) as an effort to abandon the adversarial trial process in favor of blind reliance on the skill and good intentions of prosecuting agencies.[2]
Our reservations are not unique to us. The Federal Rules of Evidence expressly exclude from the public records exception to *221 the hearsay rule the use by the government in a criminal prosecution of factual findings resulting from an official's investigation. Fed.R.Evid. 803(8)(C). Thus, in a prosecution for possession of heroin with intent to distribute, the report of a government chemist identifying a substance as heroin was held not admissible in United States v. Oates, 560 F.2d 45 (2 Cir.1977). Cf. Howard v. United States, 473 A.2d 835 (D.C. App. 1984), which was decided under a local statute bearing on the subject.
We do not deal here with a report from a hospital laboratory, as in Martorelli, or McLean v. State, 482 A.2d 101 (Del.Sup.Ct. 1984), cf. State v. James, 255 S.C. 365, 179 S.E.2d 41 (S.C.Sup. Ct. 1971), or with a report from a multifunctioned toxicological laboratory operated by a state health department, as in Reardon v. Manson, 644 F.2d 122 (2 Cir.1981), or with a procedure permitting admission of a laboratory report unless defendant indicates an intention to challenge the truth of its conclusions, see Reardon v. Manson, supra, at 130, n. 12, or with a report accompanied by testimony from a supervising toxicologist or chemist as in Soney or State v. Cosgrove, 181 Conn. 562, 436 A.2d 33 (1980) (private hospital), or Commonwealth v. Seville, 266 Pa.Super. 587, 405 A.2d 1262 (1979) (private hospital). Also, we do not deal with a confrontation clause question. Although hearsay rules and the confrontation clause were generally designed to protect similar values, California v. Green, 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970), there is no reason to believe Evid.R. 63(13) and 63(15)(a) were designed to permit admission of whatever hearsay evidence does not cross the ultimate constitutional barrier. We express no opinion on any of these matters.
What we deal with is the prospect of sanctioning convictions and the imposition of substantial penalties on the basis of the prosecutor's production of an impenetrable piece of paper that announces that his laboratory has already found defendant guilty.
The conviction is reversed.
NOTES
[1] The problem is a very different one in civil cases. There, Evid.R. 3 provides that the hearsay exclusion does not apply to the proof of material facts as to which there is no bona fide dispute. The absence of a bona fide dispute can be revealed in pre-trial discovery proceedings. R. 4:22, 4:23, 4:25. No such mechanism exists in criminal proceedings, in which a defendant has no responsibility to concede undisputed facts.
[2] Crime laboratories are not infallible. In 1978, the U.S. Department of Justice, Law Enforcement Assistance Administration, National Institute of Law Enforcement and Criminal Justice, published a study of proficiency testing of over 200 federal, state and local crime laboratories, including eight in New Jersey. Samples were submitted to the laboratories representing substances expected to be encountered in criminal investigations. The results varied. 92% of the laboratories correctly identified a sample of sodium pentobarbital. 8% did not. Type B blood was correctly identified by 96% of the laboratories but type Mn blood by only 60%. 20% incorrectly reported on automobile paint samples. In a mixture of heroin, cocaine, procaine and lactose, 98% of the laboratories reported the heroin, 70% identified the cocaine and 72% reported the procaine. On a similar test, 60% of the laboratories correctly identified a sample containing methamiphetamine and ephedrine. A test of blood analysis of samples on swatches of cloth revealed that the majority of laboratories responded incorrectly on either common origin or blood type. On a test of three paint samples of different chemical composition, less than half the laboratories correctly reported that the three did not share a common origin. In another similar test, 66% of the laboratories reported accurately. 28% of the laboratories incorrectly reported on the same kind of test involving soils. There was no test involving alcohol content of blood samples. J.L. Peterson, E.L. Fabricant and K.S. Field, Crime Laboratory Proficiency Testing Research Programs: Final Report 197-239 (U.S.G.P.O. 1978). The authors concluded that was a need for better financed, staffed and housed crime laboratories.

It seems unwise to accept as evidence of crime the written conclusions of a process that appears to be subject to error sufficiently often to justify cross-examination as to the reliability of means employed and the people employing them and the accuracy of the results.