# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Eric Emanuel English, Appellant.

Appellate Case No. 2018-000850

---

Appeal from Lexington County
Eugene C. Griffith, Jr., Circuit Court Judge

---

Opinion No. 5904
Heard September 14, 2021 – Filed April 6, 2022

---

**AFFIRMED**

---

Appellate Defender Joanna Katherine Delany, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Assistant
Attorney General Mark Reynolds Farthing, both of
Columbia; and Solicitor Samuel R. Hubbard, III, of
Lexington, all for Respondent.

---

**LOCKEMY, A.J.:** Eric Emanuel English appeals his conviction for first-degree
criminal sexual conduct (CSC) with a minor and sentence of forty years'
imprisonment. English argues the trial court erred in admitting medical test results
of himself and another individual who was also alleged to have sexually abused the
victim because no one from the laboratories that provided the test results testified
to substantiate the results. We affirm.

**FACTS**

The victim (Victim) was English's daughter. She was eleven years old at the time of English's trial. Victim lived with her mother, and until the incident in question, she spent weekends with English at his home.

On the morning of March 3, 2014, a few days after the last visit with English, Victim went to the nurse's office at her elementary school and complained her underwear was wet and dirty. In the early afternoon of the next day, Victim returned to the school nurse's office, this time complaining not only that her underwear was wet but also that she felt pain in her genital area. Victim went back to the nurse's office about an hour later, again requesting to change her underwear and complaining of discomfort in her genital area. Eventually, the school nurse was able to reach Victim's mother, who agreed to take Victim to a doctor.

After Victim returned home from school that day, she showed her soiled underwear to her mother. Victim then revealed that during her last visit with English, which occurred when she was between six and seven years old, English "put his private in [her] private" and ejaculated while she was sleeping. Victim's mother took Victim to Palmetto Health Richland Hospital, where a nurse collected samples of Victim's blood and urine and swabs from her vagina. The samples were sent to the hospital's laboratory for analysis, and some of the test results were sent to a reference laboratory outside the hospital for additional work. On March 5, 2014, a pediatrician diagnosed Victim with gonorrhea.

Jamie Stroman was the boyfriend of Victim's mother and lived with Victim and her mother. On March 5, 2014, Stroman visited a Lexington Medical Center urgent care facility in Swansea and requested to be tested for sexually transmitted diseases (STDs) because he had engaged in unprotected sex during the past two weeks. The hospital provided a hepatitis profile and tests for HIV, syphilis, gonorrhea, chlamydia, and herpes. Blood work and urethral swabs for the testing were collected on March 5, 2014, and sent to the laboratory at the main hospital on March 6, 2014. Stroman tested positive only for type I herpes.

On March 6, 2014, English went to Lexington Medical Center and requested to be checked for STDs. After examining English and inquiring about his symptoms, Dr. Wesley Frierson obtained swabs for gonorrhea and chlamydia, which he sent to the in-house laboratory at Lexington Medical Center. English tested positive for gonorrhea.

Although Victim had already been diagnosed with gonorrhea, no charges were pending against English when he and Stroman were tested for STDs.

On March 18, 2014, Victim was interviewed at the Dickerson Children's Advocacy Center (the Dickerson Center).[1] Victim revealed English assaulted her during her last weekend visit to his house. She said she was seven at the time and the assault occurred while she was sleeping on the living room floor.[2]

In a subsequent counseling session at the Dickerson Center on June 3, 2014, Victim disclosed Stroman had also assaulted her. On June 16, 2014, Stroman admitted to law enforcement that he assaulted Victim by digitally penetrating her. On March 30, 2017, Stroman was convicted of first-degree CSC with a minor following a jury trial.[3]

English was arrested in March 2014, and on October 16, 2017, he was indicted for first-degree CSC with a minor. A jury trial in the matter took place from January 8 through January 10, 2018. English did not appear, and he was tried in his absence.

The State made a pretrial motion to introduce the test results of both English and Stroman pursuant to Rule 803(6), SCRE. Citing *Ex parte Department of Health and Environmental Control*, 350 S.C. 243, 565 S.E.2d 293 (2002) (*Ex parte DHEC*), the State argued the results were business records of tests done for the purposes of medical diagnosis and treatment. The State asserted it could introduce the test results without presenting witnesses to substantiate them. English opposed the motion and argued the results were inadmissible hearsay pursuant to *State v. James*, in which our supreme court stated, "Whe[n] the results of tests or analyses are offered to prove an essential element of a crime or connect a defendant directly with the commission of a crime, such results must be substantiated by the person who conducted the tests or analyses." 255 S.C. 365, 370, 179 S.E.2d 41, 43 (1971). Citing *State v. Chisholm*, 395 S.C. 259, 717 S.E.2d 614 (Ct. App. 2011), the trial court stated it would allow the State to introduce the test results, provided

---

[1] The Dickerson Center is an organization that provides investigative services, multidisciplinary team coordination, victim advocacy services, and counseling.

[2] Victim slept on the living room floor when she stayed with English.

[3] Stroman appealed to this court, which affirmed his conviction. *State v. Stroman*, Op. No. 2019-UP-281 (S.C. Ct. App. filed Aug. 7, 2019).

a witness laid the foundation for the test. English renewed his objections when the State introduced the test results during trial, and the trial court admitted the results into evidence under *Chisholm* and "as a business record exception of hearsay."

Victim testified at trial and stated that when she last spent the night with English, he "put his thing in [her] private" and ejaculated. Victim testified she was six or seven when this occurred. Victim stated she did not tell anyone at first because she was afraid she would get in trouble. She recounted her visits to the school nurse and explained that when she got home from school, she showed her mother her underwear and told her about what English had done. In its closing argument, the State argued English's STD test results connected him directly to the sexual assault.

The jury found English guilty of first-degree CSC with a minor, and the trial court issued a sealed sentence. On April 9, 2018, English was brought before the trial court, which unsealed the sentence and ordered him to serve forty years' imprisonment. Thereafter, English moved to have his sentence reconsidered. The trial court held a hearing and issued a ruling from the bench denying the motion. This appeal followed.

## ISSUE ON APPEAL

Did the trial court err in admitting medical test results for English and Stroman without requiring testimony from the persons who tested the samples and determined the test results?

## STANDARD OF REVIEW

"The appellate court reviews a trial [court's] ruling on admissibility of evidence pursuant to an abuse of discretion standard and gives great deference to the trial court." *State v. Cross*, 427 S.C. 465, 473, 832 S.E.2d 281, 285 (2019) (alteration in original) (quoting *State v. Torres*, 390 S.C. 618, 625, 703 S.E.2d 226, 230 (2010)). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.* (quoting *State v. Douglas*, 369 S.C. 424, 429-30, 632 S.E.2d 845, 848 (2006)).

## LAW AND ANALYSIS

English argues the trial court erred in admitting the STD test results of himself and Stroman because the persons who tested and analyzed the samples did not testify and the State used the results to connect him directly to the crime. He contends

that pursuant to *James*, without substantiation of the test results by witnesses who could attest to the methods and the qualifications of the testers, the test results were inadmissible hearsay. English contends the STD test results were not admissible as a record of regularly conducted activity pursuant to Rule 803(6), SCRE, because without information about the testing methods and the qualification of the testers, the results could not be "found to be trustworthy by the [trial] court." We disagree.

First, we conclude the trial court did not abuse its discretion in admitting the STD test results into evidence because *James* is distinguishable and does not require exclusion of the test results in this case. In *James*, the defendant was convicted of administering arsenic to her husband with intent to kill him. 255 S.C. at 367, 179 S.E.2d at 42. At issue in her appeal was the trial court's decision to allow two physicians to testify about the arsenic content of urine collected from the decedent while he was being treated at Greenville General Hospital for polyneuritis. *Id.* at 367-69, 179 S.E.2d at 42-43. The urine was mailed to a California laboratory, which completed an analysis that was sent to Greenville General Hospital and copied into the decedent's hospital record. *Id.* at 367-68, 179 S.E.2d at 42. The trial court allowed the disputed testimony despite the witnesses' admissions that they did not know who performed the analysis or the method employed and could not vouch for the validity of the report. *Id.* at 368, 179 S.E.2d at 42. Our supreme court reversed the conviction, stating,

> Whe[n] the results of tests or analyses are offered to prove an essential element of a crime or connect a defendant directly with the commission of a crime, such results must be substantiated by the person who conducted the tests or analyses. Otherwise, the effect of their admission would be to allow a witness to testify without being subject to cross-examination, and thus deprive the accused of his constitutional right to be confronted with and to cross-examine the witness against him.

*Id.* at 370, 179 S.E.2d at 43.

This case is distinguishable from *James*. First, in *James*, the hospital sent the sample off to an independent lab in California and the physicians who testified were not familiar with the lab and could not verify the results. *Id.* at 367-68, 179 S.E.2d at 42. Here, however, the lab that conducted the testing was an in-house lab, and both healthcare providers testified they reviewed and verified the test

results of English and Stroman, respectively.  Second, unlike the case in *James*, the evidence at issue in this case did not present a Confrontation Clause problem.  *See id.* at 370, 179 S.E.2d at 43 ("Whe[n] the results of tests or analyses are offered to prove an essential element of a crime or connect a defendant directly with the commission of a crime, such results must be substantiated by the person who conducted the tests or analyses.  Otherwise, the effect of their admission would be to allow a witness to testify without being subject to cross-examination, *and thus deprive the accused of his constitutional right to be confronted with and to cross-examine the witness against him*.  The hearsay rule signifies a rule rejecting assertions offered testimonially which have not been in some way subjected to the test of cross-examination." (emphasis added) (citations omitted)).  Subsequent case law has clarified statements "are testimonial when the circumstances objectively indicate . . . that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  *Davis v. Washington*, 547 U.S. 813, 814 (2006).  These STD tests were not conducted to establish or prove past events potentially relevant to later criminal prosecution.  Instead, English and Stroman voluntarily requested these tests without any law enforcement involvement.  Pursuant to *Davis*, the test results were nontestimonial and therefore the admission of these test results did not present a Confrontation Clause issue.  For the foregoing reasons, we find the ruling in *James* did not prohibit the admission of English's and Stroman's test results.

Next, we find the test results were admissible under Rule 803(6), SCRE.  In 1995, the South Carolina Rules of Evidence took effect.  Rule 1103(b), SCRE.  The rules provide, "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court of this State or by statute."  Rule 802, SCRE.  Rule 803(6), SCRE, provides the following is "not excluded by the hearsay rule":

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness . . . .

Dr. Frierson testified concerning English's results and Nurse Practitioner Pamela Levi testified concerning Stroman's results. Dr. Frierson, an emergency medicine physician at Lexington Medical Center, testified he saw English as a patient on March 6, 2014, at which time English requested an STD check. Dr. Frierson testified that during the March 6, 2014 visit, he "swabbed" English to test for gonorrhea and chlamydia. Dr. Frierson explained the swabs were then transported to the in-house lab at Lexington Medical Center. Dr. Frierson acknowledged he did not personally perform the lab test, but he stated the lab analysts entered the results into the records and he verified the results. Dr. Frierson testified the test result for gonorrhea was positive.

Nurse Levi, a nurse practitioner at the Lexington Medical Center urgent care facility in Swansea, testified Stroman visited the facility on March 5, 2014, and requested STD testing. Nurse Levi stated a urethral swab was collected from Stroman to perform gonorrhea and chlamydia tests and the tests were run at the main Lexington Medical Center facility. She stated that after the tests were run, the person who conducted the tests entered the results directly into the patient's chart and a physician, nurse practitioner, or physician's assistant was required to then sign off on the results. Nurse Levi testified Stroman's results were entered March 6, 2014, and she saw, reviewed, and verified the results on March 7, 2014. Nurse Levi testified Stroman's test was negative for gonorrhea.

The testimony of Dr. Frierson and Nurse Levi established both records containing the test results were "made at or near the time" of Stroman's and English's healthcare visits. The records were made "by, or from information transmitted by, a person with knowledge." Lexington Medical Center—the same organization that both Stroman and English visited to receive healthcare—conducted both sets of tests.[4] The analysts who performed English's and Stroman's tests entered the results into the patients' records and the results were verified by Dr. Frierson and Nurse Levi, respectively. Both practitioners testified they kept records of patient visits, including tests run and diagnoses made, in the regular course of business of treating patients at Lexington Medical Center. Dr. Frierson testified he relied on such records to treat his patients. Furthermore, no evidence demonstrates a lack of trustworthiness as to the sources of the information or the methods or circumstances of preparation. Stroman and English each voluntarily requested

_____

[4] According to Nurse Levi, the Urgent Care Center in Swansea was part of Lexington Medical Center.

STD testing before law enforcement became involved in Victim's case. Healthcare professionals with Lexington Medical Center—as opposed to a law enforcement agency—performed the testing and recorded the results. Because law enforcement was not involved in the testing and the sole purpose of the testing was to diagnose and treat the patients, the trustworthiness of the test records is presumed. *See Ex parte DHEC*, 350 S.C. at 250, 565 S.E.2d at 297 ("The trustworthiness of medical records is presumed, based on the fact that the test is relied on for diagnosis and treatment."); *Jamison v. Morris*, 385 S.C. 215, 227, 684 S.E.2d 168, 174 (2009) (recognizing that if a medical test had been performed as part of the hospital's medical treatment of the subject, rather than in response to a request from law enforcement, the results "would be presumed reliable as a business record").

Based on the foregoing, evidence supports the trial court's ruling that the test results of Stroman and English were admissible under Rule 803(6) because they were records of diagnoses made at or near the time of testing "by, or from information transmitted by, a person with knowledge," and were kept in the course of a regularly conducted business activity, all as shown by the testimony of a qualified witness as Rule 803(6) requires.[5] Accordingly, we conclude the trial court did not abuse its discretion in admitting the test results under the business record exception.[6]

---

[5] Although we acknowledge *James* has not been expressly overruled, the South Carolina Rules of Evidence, which provide exceptions to the rule against hearsay, were enacted subsequent to *James*. We believe this point distinguishes this case from *James* and supports the trial court's ruling that the evidence is admissible under Rule 803(6).

[6] As we stated, the trial court cited to *Chisholm* in making its pretrial ruling; however, *Chisholm* is not probative of the issue on appeal. There, in deciding whether the trial court erred in failing to exclude HIV test results for both the defendant and the victim, this court found it unnecessary to decide the question based on its holding that any error in admission of the results was harmless in light of overwhelming evidence of the defendant's guilt. 395 S.C. at 271, 717 S.E.2d at 620. Further, the HIV test of the defendant was obtained pursuant to the State's motion rather than at the defendant's voluntary request. *Id.* at 268-69, 717 S.E.2d at 618-19. Thus, the holding in *Chisholm* is inapplicable.

**CONCLUSION**

For the foregoing reasons, we find the trial court did not abuse its discretion in admitting Stroman's and English's test results under the business records exception to the rule against hearsay pursuant to Rule 803(6). English's conviction and sentence are therefore

**AFFIRMED.**

**WILLIAMS, C.J., and MCDONALD, J., concur.**