# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Eric Emanuel English, Petitioner.

Appellate Case No. 2022-000760

———

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———

Appeal from Lexington County
Eugene C. Griffith, Jr., Circuit Court Judge

———

Opinion No. 28206
Heard March 6, 2024 – Filed June 5, 2024

———

## AFFIRMED AS MODIFIED IN PART AND
## VACATED IN PART

———

Appellate Defender Joanna Katherine Delany, of
Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Senior
Assistant Attorney General Mark Reynolds Farthing,
both of Columbia; and Solicitor Samuel R. Hubbard, III,
of Lexington, for Respondent.

———

**JUSTICE JAMES:** Eric English was convicted of first-degree criminal sexual conduct with a minor. English appealed, arguing the trial court erred in allowing into evidence laboratory reports containing his and Jamie Stroman's test results for sexually transmitted diseases (STDs). The court of appeals affirmed the trial court's ruling and English's conviction. *State v. English*, 436 S.C. 338, 872 S.E.2d 191 (Ct. App. 2022). We granted English's petition for a writ of certiorari and now affirm as modified in part and vacate in part the court of appeals' opinion.

## I.

The Victim in this case is English's biological daughter. She was six or seven years old at the time she was sexually abused. On March 4, 2014, after Victim began experiencing symptoms consistent with an STD, Victim told her mother English had sexually abused her. Victim's mother took Victim to Palmetto Health Richland where Victim tested positive for gonorrhea.

The next day, Jamie Stroman, Victim's mother's boyfriend, went to Lexington Medical Center's Swansea urgent care branch and asked to be tested for STDs. Stroman tested negative for gonorrhea. The day after that, English went to Lexington Medical Center's Lexington urgent care branch and requested an STD test. Like Victim, English tested positive for gonorrhea. There is no evidence personnel at either testing facility were aware of allegations of sexual abuse at the times Stroman's and English's samples were taken or at the times the test reports were prepared.

Before trial, the parties stipulated that Stroman admitted in June 2014 to digitally penetrating Victim and further stipulated Stroman was convicted in 2017 of first-degree criminal sexual conduct with a minor. The stipulation was published to English's jury. The State advised the trial court it would seek to introduce Victim's, English's, and Stroman's STD test reports, contending they were admissible under Rule 803(6), SCRE, the business records exception to the rule against hearsay. English lodged two objections to the admission of these test reports. First, citing *State v. James*, 255 S.C. 365, 370, 179 S.E.2d 41, 43 (1971), English argued the test reports were not admissible without the substantiating testimony of the persons who actually performed the tests. In *James*, we held that "[w]here the results of tests or analyses are offered to prove an essential element of a crime or connect a defendant directly with the commission of a crime, such results must be substantiated by the person who conducted the tests or analyses." *Id*. Second, English objected on generic hearsay grounds but did not argue the reports did not qualify for the business records exception to hearsay found in Rule 803(6), SCRE. The trial court indicated it was inclined to admit the test reports under the business

records exception if a sufficient foundation was established but stated it would withhold a final ruling until the records were actually offered into evidence.

During trial, the State offered Stroman's test report into evidence through the testimony of Pamela Levi, a family nurse practitioner at Lexington Medical Center's Swansea branch, where Stroman went for STD testing. Levi testified facility records indicated Stroman was seen by another nurse practitioner named Janice Black, who took blood samples and a urethral swab from Stroman and sent them to the main hospital's lab for analysis. Levi testified the facility maintained contemporaneous patient records in the ordinary course of business. She testified she saw Stroman's test results in the records system two days after Stroman's visit and then "reviewed them and signed off on them because no additional treatment was needed." English renewed his objection under *James* and his hearsay objection. The trial court admitted the Stroman report under Rule 803(6), SCRE. English has never argued the Stroman report did not satisfy the particulars of Rule 803(6).

The State offered English's test report into evidence through the testimony of Dr. Wesley Frierson, a board-certified emergency medicine physician employed at Lexington Medical Center's Lexington urgent care facility, the same facility where English was tested. Dr. Frierson testified facility records indicated English came to Lexington Medical Center's Lexington urgent care branch on March 6, 2014 requesting to be checked for unspecified STDs. Dr. Frierson testified he collected samples from English, sent the samples to Lexington Medical Center's in-house lab for analysis, and viewed and verified the test results after they were entered into the hospital's records system. He also testified contemporaneous patient records were kept in the ordinary course of business for the purpose of patient care, he relied upon those records for treatment purposes, and, while he did not conduct the tests, he personally verified the test results. Dr. Frierson did not expand on what his "verification" entailed. English renewed his *James* and hearsay objections, but the trial court ruled English's report was admissible as a business record under Rule 803(6), SCRE. English has never argued his test report did not satisfy the requirements of Rule 803(6).

The jury convicted English of first-degree criminal sexual conduct with a minor. English appealed, arguing the trial court erred in admitting his and Stroman's test reports in violation of this Court's mandate in *James*.[1] The court of appeals

---

[1] During trial, English argued Victim's test report was inadmissible as well; however, he now concedes Victim's test report was properly admitted.

affirmed, holding *James* was distinguishable from the facts of this case and did not prohibit the admission of English's and Stroman's test reports even though the individuals who performed the tests did not testify. *English*, 436 S.C. at 344-45, 872 S.E.2d at 194-95. Addressing an issue not raised in the trial court, the court of appeals also held the reports were nontestimonial under the United States Supreme Court's holding in *Davis v. Washington*.[2] *Id.* at 345, 872 S.E.2d at 195. The court of appeals also held the testimony of Levi and Frierson satisfied the particulars of Rule 803(6), SCRE. *Id.* at 346-48, 872 S.E.2d at 195-96. The court also noted, "[a]lthough we acknowledge *James* has not been expressly overruled, the South Carolina Rules of Evidence, which provide exceptions to the rule against hearsay, were enacted subsequent to *James*. We believe this point distinguishes this case from *James* and supports the trial court's ruling that the evidence is admissible under Rule 803(6)." *Id.* at 348 n.5, 872 S.E.2d at 196 n.5.

## II.

In criminal cases, appellate courts sit to review errors of law only. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Appellate courts typically review a trial court's ruling on the admissibility of evidence pursuant to an abuse of discretion standard and give great deference to the trial court. *State v. Cross*, 427 S.C. 465, 473, 832 S.E.2d 281, 285 (2019). An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law. *Id*. We employ the abuse of discretion standard when we review a trial court's ruling on the admissibility of evidence under Rule 803(6), SCRE. However, the admissibility of Stroman's and English's STD test reports presents a mixed question of law and fact, as a defendant's constitutional right is in play. We will affirm the trial court's factual findings underpinning its legal conclusion if the factual findings are supported by any evidence in the record; however, the legal conclusion—whether either report is testimonial and therefore subject to the Confrontation Clause—is a question of law we review de novo. *State v. Brewer*, 438 S.C. 37, 44, 882 S.E.2d 156, 160 (2022) (citing *United States v. Mathis*, 932 F.3d 242, 255 (4th Cir. 2019)); *cf. State v. Miller*, 441 S.C. 106, 119, 893 S.E.2d 306, 313 (2023) ("[W]e will review the trial court's factual findings regarding voluntariness [of confessions under the Fifth and Fourteenth Amendments] for any evidentiary support. However, the ultimate legal conclusion—whether, based on those facts, a statement was voluntarily made—is a question of law subject to de novo review."); *State v. Frasier*, 437 S.C. 625, 633-34, 879 S.E.2d 762, 766 (2022)

---

[2] 547 U.S. 813, 814 (2006).

("[A]ppellate review of a motion to suppress based on the Fourth Amendment involves a two-step analysis. This dual inquiry means we review the trial court's factual findings for any evidentiary support, but the ultimate legal conclusion—in this case whether reasonable suspicion exists—is a question of law subject to de novo review.").

## III.

We first address English's argument that our holding in *James* renders English's and Stroman's test reports inadmissible. In *James*, we held:

> Where the results of tests or analyses are offered to prove an essential element of a crime or connect a defendant directly with the commission of a crime, such results must be substantiated by the person who conducted the tests or analyses. Otherwise, the effect of their admission would be to allow a witness to testify without being subject to cross-examination, and thus deprive the accused of his constitutional right to be confronted with and to cross-examine the witness against him.

*James*, 255 S.C. at 370, 179 S.E.2d at 43.

We decided *James* in 1971, more than two decades before the adoption of the South Carolina Rules of Evidence in 1995, and more than three decades before the United States Supreme Court significantly altered the analysis of whether the admission of out-of-court oral and written statements violates a criminal defendant's Sixth Amendment right "to be confronted with the witnesses against him." U.S. Const. amend. VI; *see Crawford v. Washington*, 541 U.S. 36 (2004). Beginning with *Crawford*, the United States Supreme Court now determines the admissibility of such statements by first deciding if they are testimonial or nontestimonial. *See, e.g., Crawford*, 541 U.S. at 59 (holding the Confrontation Clause permits admission of "[t]estimonial statements of witnesses absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine"); *Davis*, 547 U.S. at 821; *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309-10 (2009); *Michigan v. Bryant*, 562 U.S. 344, 354-60 (2011); *Bullcoming v. New Mexico*, 564 U.S. 647, 658-59 (2011); *Williams v. Illinois*, 567 U.S. 50, 64-65 (2012). Following the United States Supreme Court's lead, we and the court of appeals have employed the testimonial v. nontestimonial framework, with no deference—or even reference—to *James*. *See, e.g., Brewer*, 438 S.C. at 48-55, 882 S.E.2d at 162-65; *State v. Prather*, 429 S.C. 583, 605-08, 840 S.E.2d 551, 562-64 (2020); *State v. Brockmeyer*, 406 S.C. 324, 339-43, 751 S.E.2d 645, 653-55 (2013); *State v. Stewart*, 435 S.C. 405, 415-16, 867 S.E.2d 33, 38-39 (Ct. App. 2021); *State*

*v. Davis*, 420 S.C. 50, 65-68, 800 S.E.2d 138, 146-47 (Ct. App. 2017). In some situations, which we need not review here, the *James* admissibility standard might be more restrictive than the testimonial v. nontestimonial framework. In other situations, the *James* rule might be less restrictive.[3] We overrule *James*, as it has been abrogated by United States Supreme Court decisions—and by decisions of this Court—employing the testimonial v. nontestimonial framework. Having overruled *James*, we will now consider whether Stroman's and English's test reports were testimonial or nontestimonial.

## IV.

When the court of appeals issued its opinion in this case, it did not have the benefit of our opinion in *Brewer*. Justice Hearn, writing for the Court, reviewed the history of federal and South Carolina jurisprudence concerning testimonial and nontestimonial evidence. *Brewer*, 438 S.C. at 48-55, 882 S.E.2d at 162-65. There, we said a criminal defendant has the right to confront the author of a report only if the author of the report is a "witness"—one who "bear[s] testimony"—against the accused. *Id.* at 48, 882 S.E.2d at 162 (quoting *Brockmeyer*, 406 S.C. at 342, 751 S.E.2d at 654). Thus, "[w]hether the Confrontation Clause applies 'turns on whether the challenged out-of-court statement is testimonial . . . .'" *Id.* (quoting *Brockmeyer*, 406 S.C. at 342, 751 S.E.2d at 654). As we held in *Brewer*, an out-of-court statement, including a written report, is considered testimonial when its primary purpose is to serve as evidence or an out-of-court substitute for trial testimony. *Id.* at 48-49, 882 S.E.2d at 162 (quoting *Brockmeyer*, 406 S.C. at 342, 751 S.E.2d at 654). In determining the primary purpose of the out-of-court statement, courts "look for the primary purpose that a reasonable person would have ascribed to the statement, taking into account all of the surrounding circumstances." *Williams*, 567 U.S. at 84 (citing *Bryant*, 562 U.S. at 359-60). "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Bryant*, 562 U.S. at 360.

---

[3] Here, the *James* test would likely not bar the admissibility of the Stroman and English STD reports because they were not offered to prove an element of the crime of criminal sexual conduct, nor were they offered to *directly* connect English with the commission of that crime. The reports merely indirectly—or circumstantially— connected English with the commission of that crime.

Here, the question is whether a reasonable person preparing the report would have believed the reports would be used to establish or prove facts potentially relevant to a criminal prosecution. The United States Supreme Court has suggested statements made solely for the purpose of medical diagnosis or treatment are considered nontestimonial after *Crawford* and *Davis*. *See Melendez-Diaz*, 557 U.S. at 312 n.2 (noting "medical reports created for treatment purposes . . . would not be testimonial under our decision today"). Nothing in the record suggests that, at the time Stroman's and English's test reports were prepared, a reasonable person preparing the reports would have expected them to be used for any purpose other than medical diagnosis and treatment.

## V.

Finally, we address the court of appeals' holding that English's and Stroman's test reports were admissible as business records under Rule 803(6), SCRE. *English*, 436 S.C. at 346-48, 872 S.E.2d at 195-96. At trial, English lodged only two objections to the admission of his and Stroman's test reports. His first objection was based on the now-abrogated *James* rule. English's second objection was hearsay. The trial court admitted the test report under Rule 803(6). However, English never argued the particulars of Rule 803(6) were not satisfied. This issue was, therefore, unpreserved, and the court of appeals erred in addressing it. *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301-02, 641 S.E.2d 903, 907 (2007). Accordingly, we vacate the portion of the court of appeals' opinion holding English's and Stroman's test report was admissible under Rule 803(6), SCRE. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) ("An issue that was not preserved for review should not be addressed by the Court of Appeals, and the court's opinion should be vacated to the extent it addressed an issue that was not preserved."). Our ruling on this point may seem overly particular; however, one of the foundations for the admissibility of business records under Rule 803(6) is that the person testifying about the reports—here, Dr. Frierson and Nurse Levi—must be a "custodian" of the records or "other qualified person." The record does not reflect whether either witness was a custodian or other qualified person.

## VI.

We hold *James* has been abrogated by this Court's and the United States Supreme Court's subsequent precedent interpreting the Sixth Amendment's Confrontation Clause. We also hold that under the post-*Crawford* analysis, English's and Stroman's STD test reports were nontestimonial; therefore, the reports did not implicate English's Sixth Amendment right of confrontation, and the trial court did

not err when it admitted the reports without requiring the testimony of the individuals who authored the reports.

Because English did not argue the reports did not meet the requirements of Rule 803(6), we affirm the trial court's ruling the reports were admissible under that rule; however, for the reasons stated in Section V of this opinion, we vacate the court of appeals' holding that the requirements of Rule 803(6) were satisfied.

**AFFIRMED AS MODIFIED IN PART AND VACATED IN PART.**

**BEATTY, C.J., KITTREDGE, FEW and HILL, JJ., concur. FEW, J. concurring in a separate opinion in which HILL, J., concurs.**

**JUSTICE FEW:** I agree with and concur in Justice James' majority opinion. I write separately to explain my view that this issue should have been addressed at trial under Rule 702 of the South Carolina Rules of Evidence. Whether Eric English or Jamie Stroman had a sexually transmitted disease is a matter of medical and scientific evidence, and the proponent of such evidence must present it through an expert witness after satisfying the elements of Rule 702. Because English's counsel did not mention Rule 702 in his objection, neither the trial court, the court of appeals, nor this Court had any reason to address it. There should be no confusion, however, that in future trials the results of a medical test such as the ones at issue in this case may not be admitted simply because the report of the test satisfies a hearsay exception and does not violate the Confrontation Clause. In addition to getting across those two evidentiary hurdles, the proponent must jump through the hoop of Rule 702.

**HILL, J., concurs.**